Raymond DELL, Petitioner,

v.

DEPARTMENT OF EMPLOYMENT SERVICES, Respondent, International Hotel

and

Crum & Forster Insurance Company, Intervenors.

No. 84–891.

District of Columbia Court of Appeals.
Argued March 20, 1985.
Decided Sept. 30, 1985.

*pra*, § 943, at 800.

George E. Swegman, Washington, D.C., for petitioner.

Richard B. Nettler, Asst. Corp. Counsel, Washington, D.C., with whom Inez Smith Reid, Corp. Counsel, John H. Suda, Principal Deputy Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for respondent.

Jeffrey W. Ochsman, Washington, D.C., for intervenors.

Before PRYOR, Chief Judge, and NEWMAN and TERRY, Associate Judges.

TERRY, Associate Judge:

Petitioner seeks review of an order of the Department of Employment Services denying his claim for workers' compensation benefits. We find error in the Department's ruling, and accordingly we reverse.

## I

Raymond Dell, the petitioner, was working as a bartender at the International Hotel on August 29, 1982, when he was injured on the job. Having gone to a storeroom for some supplies, Dell found himself standing in a puddle of syrup. In trying to extricate himself from the syrup, he slipped and fell, hitting his back and hip against a partition and a refrigerator.

At the time of his accident, Mr. Dell was not in tip-top physical condition. In 1970 he injured his left knee in an automobile accident, and eventually he had surgery on the knee in April 1977. He applied for Social Security disability benefits due to his knee injury, but was turned down. He was, however, granted limited Social Security retirement benefits, since he was then sixty-three years old.

In 1978 Dell began part-time employment. He went to work for the International Hotel in 1979 as a bartender, working about twenty hours a week. He continued, however, to have medical problems.

In June 1982 he had corrective surgery for varicose veins in his legs. He also suffered from pain in his left knee, although this condition did not cause him to miss any work.

On August 20, 1982, Mr. Dell was examined by Dr. Peter Kenmore, a professor of orthopedic surgery at Georgetown University Medical Center. Dr. Kenmore diagnosed Dell's left knee problem as actually stemming from severe arthritis of the left hip. Dell, however, made no complaints about his left hip, and at the hearing below he testified that his hip was not bothering him in August 1982.[1] Nevertheless, Dr. Kenmore told Mr. Dell that his hip would eventually require surgery, which Dell declined for the time being, opting instead for treatment by medication.

Dr. Kenmore examined Mr. Dell again on August 27, two days before his on-the-job injury. The doctor's diagnosis was unchanged, but Dell still refused to have surgery on his hip.

After he was injured on August 29, Mr. Dell continued to work until October 1. When he visited Dr. Kenmore on September 17 for another examination, Dell did not mention his accident, but the doctor did notice some tenderness over Dell's left buttock. Dell did tell Dr. Kenmore about his accident when he saw him again on September 27, complaining of a new pain in the back of the hip. Dr. Kenmore examined him and concluded that he had aggravated the arthritic condition in his hip and had also sustained a new back injury.

On October 1 Mr. Dell was still in pain, so he visited the doctor again to discuss the possibility of an operation. On October 12 he finally had the operation, which included a total replacement of his hip. Post-operative bleeding caused pressure on the sciatic nerve, resulting in a numbness and paralysis of his left foot. He now can walk only with the aid of a brace or a cane.

---

1. Dr. Kenmore's records indicated that Mr. Dell was experiencing pain in his left hip when the doctor first examined him on August 20. Dell testified that these records were in error.

Mr. Dell filed for benefits under the District of Columbia Workers' Compensation Act, D.C. Code §§ 36–301 through 36–345 (1981 & 1985 Supp.). He testified at a hearing before a hearing examiner, and depositions were received in evidence from both Dr. Kenmore and Dr. Maxwell Hurston, who in August 1983, a year after the injury, examined Mr. Dell and reviewed his medical records. The hearing examiner issued a "Proposed Compensation Order" awarding Dell disability benefits, to which both parties filed exceptions. Dell argued that the evidence entitled him to permanent benefits, even though his claim was only for temporary benefits; his employer, the International Hotel, essentially challenged the sufficiency of the evidence.

The Director of the Department of Employment Services (hereafter "the Director") rejected the hearing examiner's proposed order, ruling that it was not supported by substantial evidence. He also found Dell's disability not to be permanent. Dell now asks this court to reverse the Director's decision and to award him the benefits he seeks.

## II

Our principal task here is to determine the correct standard by which the Director may review the findings of a hearing examiner in a workers' compensation case. Petitioner argues that the Director was limited to a substantial evidence review of the hearing examiner's proposed compensation order, and that the Director exceeded his authority by considering the matter *de novo* and rejecting the examiner's findings, which were supported by substantial evidence.

■ The right to a hearing in a workers' compensation case is granted by statute to "any interested party." D.C.Code § 36–320 (c) (1981) provides in pertinent part:

The Mayor shall make or cause to be made such investigations as he considers necessary in respect of the claim [for compensation], which may include processing the claim through a central sys-

tem in order to give the Mayor an advisory opinion on the rate and degree of disability. Upon application of any interested party, the Mayor shall order a hearing within a reasonable time.... Within twenty days after such hearing is held, the Mayor shall by order reject the claim or make an award in respect of the claim based upon substantial evidence before him. If no hearing is ordered ... the Mayor shall, by order, reject the claim or make an award in respect of the claim based upon substantial evidence before him.

The Mayor has delegated all his functions under the Workers' Compensation Act to the Director of the Department of Employment Services. Mayor's Order No. 82–126, 29 D.C. Reg. 2843 (1982). The Director, in turn, has issued regulations governing workers' compensation proceedings. The regulations pertinent to this case are as follows:

> 3626.2. Where Application for Hearing has been made by an interested party or where a hearing has been ordered by the Office [of Workers' Compensation] on its own initiative, a compensation order shall be issued by a Hearing or Attorney Examiner within twenty (20) working days after the impartial hearing is concluded.

> 3626.3. Where an interested party seeks review of a compensation order issued by the Office without a hearing, the Director shall provide administrative review under section 23(b)(2) of the Act [D.C.Code § 36–322(b)(2) (1981)].

> 3626.4. *The Director shall affirm the compensation order if it is supported by substantial evidence in the record.*

29 D.C.Reg. 5565 (1982) (emphasis added). The italicized language, compelling the Director to affirm any compensation order which is based on substantial evidence, provides strong support for petitioner's argument. The Department maintains, however, that this regulation has no bearing on petitioner's case. According to the Department, section 3626.4 applies only to those

compensation orders issued without a hearing.[2]

This court is fully aware of the deference that it must ordinarily give to an agency's interpretation of its own regulations. As the Supreme Court has said, an agency's interpretation "becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945); *accord, e.g., Dupont Circle Citizens Ass'n v. District of Columbia Zoning Commission*, 431 A.2d 560, 565 (D.C.1981). In this case, however, we conclude for two reasons that the Department plainly erred in interpreting section 3626.4 as inapplicable to the present case.

■ First, the court cannot accept an interpretation which contradicts the plain language of the regulation itself. In *Dankman v. District of Columbia Board of Elections and Ethics, supra* note 2, the Board had invalidated the signatures on several petitions on the sole ground that the persons circulating the petitions were not qualified electors in the District of Columbia. But the Board's ruling contradicted one of its own regulations, which specifically stated that the failure of a circulator to be a qualified elector did not invalidate the signatures of persons who were qualified electors. The Board attempted to justify its position by injecting—through interpretation—several qualifiers into the plain meaning of the regulation. We held that the Board's interpretation "served to qualify the rule into oblivion" and was plainly erroneous. 443 A.2d at 514.

■ Similarly, the regulation at issue here, section 3626.4, contains no qualifiers. Nowhere does it state that it applies only to those compensation orders issued without a hearing. Although the immediately preceding regulation, section 3626.3, refers

to orders issued without a hearing, the regulation before that, section 3626.2, deals with orders issued after a hearing has been held. There is nothing in the language of section 3626.4 that limits its application to one type of compensation order rather than the other. Nor does section 3626.4 differentiate between a hearing examiner's "recommended" or "proposed" order and a "final" order. Section 3626.2 refers to the hearing examiner's decision as a "compensation order," and the regulations do not suggest that this order is different in any way from the "compensation order" mentioned in section 3626.4.[3] Consequently, we cannot accept the Department's restrictive interpretation of section 3626.4, for it is inconsistent with the regulation's explicit language. Section 3626.4 unequivocally binds the Director to a substantial evidence review in all cases, with no exceptions.

■ Second, the Department's interpretation is contrary to well-established principles of administrative law. Traditionally, a hearing examiner's decision has been entitled to greater consideration if the examiner, as in this case, has heard live testimony and observed the demeanor of the witnesses. "The significance of [the hearing examiner's] report ... depends largely on the importance of credibility in the particular case." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 496, 71 S.Ct. 456, 469, 95 L.Ed. 456 (1951). Stated differently, the decisions of a hearing examiner are to be "given special weight when they depend upon demeanor of witnesses." 3 K. Davis, Administrative Law Treatise § 17.16, at 330 (2d ed. 1980). This court has also recognized the "general rule that on credibility questions, the factfinding of hearing officers is entitled to great weight ...." *In re Dwyer*, 399 A.2d 1, 12 (D.C.1979); *cf. Stevens Chevrolet, Inc. v. Commission on Human Rights*, 498 A.2d 546 (D.C.1985) (new hearing required after hearing exam-

2. It is of course axiomatic that an agency is bound by its own regulations. *E.g., Vitarelli v. Seaton*, 359 U.S. 535, 539–540, 79 S.Ct. 968, 972–973, 3 L.Ed.2d 1012 (1959); *Dankman v.*

*District of Columbia Board of Elections and Ethics*, 443 A.2d 507, 513 (D.C.1981) (en banc).

3. *See also* sections 3622.4 and 3624.9, 29 D.C. Reg. 5562–5563 (1982).

iner retired without reporting his findings to the agency, because agency's decision depended on credibility of witnesses). In contrast, the Department's interpretation of section 3626.4 illogically gives greater deference to those decisions rendered without hearings. If section 3626.4 applies only to such decisions, as the Department contends, then the Director is bound to affirm a compensation order based on substantial evidence even though no credibility determination has been made. On the other hand, if an order is issued after a hearing, in which credibility is an important (perhaps critical) factor, the Director would be entitled to conduct a *de novo* review. The Department's interpretation, in our view, would drastically alter the traditional standards for review of administrative findings and would turn the law on its head.

■ "No statute is to be construed as altering the common law, farther than its words import. It is not to be construed as making any innovation upon the common law which it does not fairly express." *Shaw v. Merchants' National Bank*, 101 U.S. (11 Otto) 557, 565, 25 L.Ed. 892 (1879). This principle applies to regulations as well as statutes. *Saunders v. First National Realty Corp.*, 245 A.2d 836, 838 (D.C.1968) (housing regulations), *rev'd on other grounds sub nom. Javins v. First National Realty Corp.*, 138 U.S.App.D.C. 369, 428 F.2d 1071, *cert. denied*, 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970); *Herrell v. Pimsler*, 307 F.Supp. 1166, 1172 (D.D.C. 1969) (traffic regulations). In this case the workers' compensation regulations do not "fairly express" any intention to abandon the well-reasoned principle stated in *Dwyer, Universal Camera*, and many other cases. We therefore hold that the Department's interpretation is arbitrary and capricious, and not in accordance with established legal doctrine. *See* D.C.Code § 1–1510(a)(3)(A) (1981).

**4.** D.C.Code §§ 1–1501 through 1–1510 (1981).

**5.** The fact that such language appears in the federal statute but not in the DCAPA suggests

■ During oral argument, counsel for the Department cited several authorities, including *Universal Camera, supra, and FCC v. Allentown Broadcasting Corp.*, 349 U.S. 358, 75 S.Ct. 855, 99 L.Ed. 1147 (1955), to support the Department's contention that the director is not restricted to a substantial evidence review. These authorities, however, depend on the language of the federal Administrative Procedure Act, which provides that an agency, upon review of an initial decision (*e.g.*, by a hearing examiner), has "all the powers which it would have in making the initial decision...." 5 U.S.C. § 557(b) (1982); *see Universal Camera, supra*, 340 U.S. at 494, 71 S.Ct. at 468. The District of Columbia Administrative Procedure Act (DCAPA)[4] contains no such language, and thus the cases on which the Department relies are not pertinent here.[5]

### III

■ Having ascertained that the scope of review by the Director of the hearing examiner's decision is limited, we must now consider whether the Director was correct in ruling that the hearing examiner's decision in petitioner's favor was not based on substantial evidence. Since the substantial evidence issue is an issue of law, "the reviewing court has the greater expertise, and the agency decision is therefore accorded less deference." *Saah v. District of Columbia Board of Zoning Adjustment*, 433 A.2d 1114, 1116 (D.C.1981) (citations omitted). The Supreme Court has also ruled that when an agency action "is based upon a determination of law as to which the reviewing authority of the courts does come into play, an order may not stand if the agency has misconceived the law." *SEC v. Chenery Corp.*, 318 U.S. 80, 94, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943). Thus we must decide whether the Director ap-

that its omission was the product of a conscious choice by Congress when it enacted the DCAPA in 1968. *See District of Columbia Hospital Ass'n v. Barry*, 498 A.2d 216, 219 (D.C.1985).

plied the proper legal standards in ruling as he did.

■ Those standards have been repeatedly stated by the courts. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938) (citations omitted); *accord, e.g., Washington Post Co. v. District Unemployment Compensation Board*, 377 A.2d 436, 439 (D.C.1977). In addition, the trier of fact is entitled to draw reasonable inferences from the evidence presented. *North Central Airlines, Inc. v. CAB*, 105 U.S.App.D.C. 207, 210, 265 F.2d 581, 584, *cert. denied*, 360 U.S. 903, 79 S.Ct. 1285, 3 L.Ed.2d 1254 (1959). The reviewing authority (in this case the Director) is bound by the decision of the initial authority or tribunal (in this case the hearing examiner) that follows from the latter's findings of fact, if those findings are supported by substantial evidence, even though the reviewing authority may have reached a contrary result based on an independent review of the record. *See Washington Post Co., supra*, 377 A.2d at 439.

■ The record makes clear that the Director "misconceived the law"[6] in rejecting the hearing examiner's proposed compensation order on the ground that it was not supported by substantial evidence. The Director based his ruling on the following testimony by Dr. Kenmore:

### ON REDIRECT

Q. Doctor, had you noticed back in October—make that October 11, 1982, the black line that appears on the hip, that you noticed for the first time according to your testimony when you looked at the X-rays today, that was not apparent on the X-ray taken on August 20, would that have—would you have considered that to have been an aggravation?

A. Probably, yes.

Q. What is the significance of that black line? What does it represent? Can you tell—

A. It might represent a little crack.

Q. That crack definitely wasn't apparent in the August 20th X-ray?

A. Right.

\* \* \* \* \* \*

### ON RECROSS

Q. Doctor, the black crack that you just referred to, [it] is certainly conceivable that could happen just from walking around; isn't it?

A. Uh-huh.

Q. You could not state, with any degree of medical certainty, that that crack arose as a result of the August 29, 1982 slip; isn't that correct?

A. I think that's right.

Q. In fact, it could have arisen out of any number of things including the pain he complained of when he moved at night?

A. Yeah, I don't know what caused it. I didn't know it was there until I just saw it now.

Q. Therefore, Doctor, you cannot say that the black line within a reasonable degree—you cannot relate that black line as an aggravation of his condition as a result of August 29, 1982. You can only indicate that that was not something—

A. It wasn't present on the 20th day of August, and it was present on the 11th of October. That is all I can say.

"[F]rom Dr. Kenmore's conclusion that a crack present for the first time on a post-injury x-ray was probably an aggravation,"[7] the hearing examiner drew the inference that Dell's hip condition had indeed been aggravated by his on-the-job injury. The Director disagreed; he found instead that

---

6. *SEC v. Chenery Corp., supra*, 318 U.S. at 94, 63 S.Ct. at 462.

7. Proposed Compensation Order at 7.

"Dr. Kenmore's testimony in regard to the October 11, 1982 X-ray does not establish a crack caused by an aggravation."[8] But Dr. Kenmore's testimony on the x-ray did not have to "establish" anything; rather, it merely had to provide the hearing examiner with enough facts so that he could reasonably infer that Mr. Dell's fall in the puddle of syrup aggravated his arthritic hip condition. Under the proper standard of review, the hearing examiner's inference was certainly justifiable. Dr. Kenmore testified that the black line on the x-ray "probably" was an aggravation, "a little crack." That line was not present on the August 20 x-ray, but it did appear on October 11, after Mr. Dell's injury.

Dr. Kenmore provided additional evidence that should have bound the Director to affirm the hearing examiner's decision. For example, the doctor's notes on his September 27 examination of Mr. Dell contain the statement, "The hip problems are certainly antedating the present episode, but the whole problem was aggravated by the accident, and the back injury is new." In addition, Dr. Kenmore testified in his deposition:

> I think he [petitioner] sustained an injury in the accident of the 29th of August and he hurt his back. He had a contusion of the back and a back strain, *and he had a contusion of the back of the left hip and it made his symptoms worse.* From a patient who continued to work, and didn't want to seriously consider an operation, he felt he could not work anymore and then wanted to have the operation to try and get better. [Emphasis added.]

This testimony provides substantial evidentiary support for the hearing examiner's proposed order. The Director's decision to ignore it, as well as the doctor's notes of September 27, constituted reversible error.

**8.** Final Compensation Order at 7.

**9.** Petitioner's counsel stated during oral argument that we need not reach the issue of whether Dell's disability was permanent or temporary

We therefore reverse the Director's decision and remand this case to the Department with directions to reinstate the hearing examiner's proposed compensation order as the final compensation order in this case.[9]

*Reversed and remanded.*

NEWMAN, Associate Judge, concurring:

I join the court's opinion but write separately to address one case discussed therein, *Dankman v. District of Columbia Board of Elections and Ethics, ante* at 106. I joined Judge Mack's dissent in that case, 443 A.2d at 527–33, contending that the regulation, as construed by this court, was in violation of the statute. I am still of that view. However, I agree with the opinion of the court in this case that the Director of the Department of Employment Services could not qualify a *valid* rule into oblivion.

if we reinstated the original compensation award. Accordingly, we express no opinion on the issue of permanence.