Ana D. SANTOS, Petitioner,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT
SERVICES, Respondent,

and

Washington Hilton Hotel, Intervenor.

No. 86–1177.

District of Columbia Court of Appeals.

Argued Sept. 22, 1987.
Decided Jan. 29, 1988.

Michael R. Kowalski, for petitioner.

Jeffrey R. Miller, Washington, D.C., for intervenor.

Before NEWMAN, FERREN, and BELSON, Associate Judges.

NEWMAN, Associate Judge:

Ana D. Santos appeals from an order of the Department of Employment Services (hereinafter "DOES" or "the Department") awarding her workers' compensation benefits for the period from May 7 to June 4, 1984. She claims entitlement to total temporary disability and medical expense benefits from the time she incurred injury on May 7, 1984. She contended that she continued to be partially disabled at the time of the administrative hearing. Finding error in the Department's ruling, we reverse

its order and remand for further proceedings.

## I

Ana Santos was employed on the kitchen staff of the Washington Hilton Hotel (the "employer") for over ten years from 1974 until her injury on May 7, 1984. On that date, she slipped on a substance spilled on the kitchen floor and fell on her back. She was taken to the emergency room at George Washington University Hospital, where she was treated for an ankle sprain and cervical strain.

Santos was subsequently referred by the employer to Dr. Joseph D. Linehan, an orthopedic specialist, who first examined her on May 25, 1984. At that time Santos was complaining of headaches and pain in the cervical area. Dr. Linehan diagnosed Santos as suffering from acute cervical strain, and prescribed treatment with anti-inflammatory drugs and muscle relaxers. Although Santos was still complaining of headaches at a follow-up visit on May 30, Dr. Linehan released her to return to work on June 4, 1984, with no restrictions. Her workers' compensation disability payments were terminated on that date.

Santos attempted to return to work on June 12, but could not work a full day due to back pain. After a follow-up visit on June 19, Dr. Linehan noted that Santos was now complaining of pain throughout the area of her shoulders and back. He opined that her symptoms had lasted entirely too long, and that she did not really want to work, though able to do so. He stated in his report, "There is nothing more I can try for her." After another follow-up visit on June 27, Dr. Linehan noted that Santos had subjective complaints of pain in her neck and shoulders and numbness in her hand.

Dissatisfied with the treatment afforded her by Dr. Linehan, Santos consulted Dr. Michael W. Dennis, chief of neurosurgery at Washington Hospital Center. In his first examination of Santos on June 28, 1984, Dr. Dennis found that there was tenderness to palpitation of the trapezius muscles bilaterally, and that the normal lordotic curve [1] was exaggerated due to her overweight condition.[2] He diagnosed a low grade mechanical injury to the back, and recommended that she be instructed in physiotherapeutic back exercises. At that time, he considered her to be temporarily totally disabled, based upon her subjective complaints, as well as evidence derived from her examination, which was compatible with mechanical instability of the back.

At her return visit to Dr. Dennis' office in September, Santos still complained of pain in her back and shoulders. Dr. Dennis' examination revealed no change in her conditions. Despite his previous recommendations, Santos had received no physiotherapeutic treatment since her first visit.[3] He therefore arranged for her to receive such treatment. At that time, he felt that she was still temporarily totally disabled.

Santos' condition began to improve as a result of the physiotherapy. At an office visit on December 13, Dr. Dennis found that Santos was responding to treatment. His report noted that Santos felt considerably better and had asked if she could return to work performing some form of light duty. He therefore released her to return to work on January 2, 1985, with restrictions that she not be given work requiring her to bend her back frequently or stand in a static position for long periods of time, and that she not be required to lift weights of over thirty pounds.

---

1. The lordotic curve is the concavity in the curvature of the lumbar and cervical spine as viewed from the side. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 757 (26th ed. 1981).

2. At the time of her injury, Santos was 5 feet, 4 inches tall and weighed 235 pounds.

3. At the first consultation on June 28, Dr. Dennis had not himself prescribed physiotherapy for Santos, nor had he referred her to any

physiotherapists. He testified at deposition that he understood the purpose of her first visit to be a disability assessment, and did not at that point consider himself a treating physician. It was his policy, when performing such an assessment, to place the recommendations in his report and refer them to the agency concerned. He would not initiate treatment unless requested by the referring party.

In the meantime, Santos had been examined on a single occasion by a third doctor, Dr. Stephen F. Gunther, Chairman of the Department of Orthopaedic Surgery at the Washington Hospital Center. This examination had taken place on October 29, 1984, at the request of the employer. Dr. Gunther could find no objective evidence indicating that Santos could not perform her usual job. He later testified by deposition that while during the examination Santos claimed to be in great pain, and needed the help of her interpreter [4] to move about the examing room and get on the examing table; after the examination, he observed her from his office window walking unaided to the car which had brought her, open the car door, and get into the front seat unaided.

After being released for restricted work by Dr. Dennis on January 2, 1985, Santos, according to her hearing testimony, was not offered a position with the employer consistent with her work restrictions. At the request of employer's attorney, a labor market survey was performed by a rehabilitation consultant, in which were listed a number of potential job openings consistent with Santos' abilities and work restrictions. According to her testimony, Santos called the employers on this list, as well as other job listings which she had found through her own efforts, but to no avail. The jobs available required more fluency in English than she had, or were incompatible with her physical work restrictions. Her union could find her no suitable employment either.

Santos filed a claim for temporary total disability benefits and medical expense benefits from the date of her injury. After a hearing on April 4, 1985, the Hearing Examiner found Santos entitled to temporary total disability compensation and medical benefits from June 4, 1984 through October 29, 1984. The Examiner credited Dr. Dennis' conclusion that Santos' injury took an unusually long time to heal because of her excessive obesity and exaggeration of the lordotic curve. Based upon Dr. Dennis' medical opinions, the Examiner found that

Santos was disabled beyond June 4, 1984, the date when Dr. Linehan had released her for unrestricted work. However, he found that Santos had not established temporary total disability beyond October 29, 1984, for the following reason:

> The validity of Dr. Dennis's opinion of continuing disability is dependent on whether claimant was candid in relating her complaints to him. Dr. Gunther's testimony concerning the marked inconsistencies between claimant's behavior in his office and outside his office, which I find both reliable and credible, raises serious questions as to claimant's credibility at least as of her appointment with Dr. Gunther. Based on Dr. Gunther's testimony, I do not find claimant's continuing complaints credible and, since Dr. Dennis's opinion is based on claimant's complaints, I do not find his reports after October 29, 1984 (claimant's appointment with Dr. Gunther) reliable.

*Santos v. Department of Employment Services*, H & AS No. 84–428, Recommended Compensation Order at 7 (DOES, Aug. 9, 1985).

The Director of DOES rejected the recommendation of the Hearing Examiner, finding that it was not supported by substantial evidence. The Director reiterated Dr. Linehan's conclusion on June 4, 1984, that Santos exhibited no objective evidence of continued disability, and his statement in his June 19 medical report that there was nothing more he could do for her. The Director dismissed the medical opinions of Dr. Dennis, the treating physician, stating simply that "his medical reports did not present adequate rationale which could support the conclusion that Claimant was disabled beyond June 4, 1984." *Santos v. Department of Employment Services*, H & AS No. 84–428, Final Compensation Order at 5 (DOES, July 24, 1986). He, therefore, ordered that Santos was entitled to neither disability nor medical benefits beyond June 4, 1984. Santos petitioned for our review of the Final Compensation Order.

---

4. Santos, who came to the United States from El Salvador in 1970, speaks very little English.

## II

 We are persuaded that the Director's ruling was not in accordance with law. *See* D.C. Code § 1–1510(a)(3)(A)(1981). The Director was restricted to substantial evidence review of the Hearing Examiner's Recommended Order. That is, he was bound by the Examiner's findings of fact if those findings were supported by substantial evidence in the record, considered as a whole. 7 D.C.M.R. § 230.9 (1986); *Gunty v. Department of Employment Services,* 524 A.2d 1192 (D.C. 1987); *Dell v. Department of Employment Services,* 499 A.2d 102 (D.C.1985). The term "substantial evidence" has been defined by the courts as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938), *quoted in Washington Post Co. v. District Unemployment Compensation Board,* 377 A.2d 436, 439 (D.C.1977). The Director was bound to accept factual findings supported by substantial evidence, "even though [he] may have reached a contrary result based on an independent review of the record." *Dell, supra,* 499 A.2d at 108.

The Hearing Examiner's factual finding that Santos' disability extended beyond June 4, 1984, was supported by substantial evidence in the record. Dr. Dennis' medical report of June 28, 1984, noted that his examination revealed tenderness to palpitation of the trapezius muscles bilaterally, and exaggeration of the lordotic curve. He noted, "[I]t is possible that she has a residual low grade mechanical injury to the back." He made the same findings at the September 28 follow-up visit. In his report of Santos' November 1, 1984, office visit, he diagnosed a "resolving strain syndrome."

Dr. Dennis gave deposition testimony that Santos' recovery period had been prolonged by her overweight condition, which was a source of chronic aggravation to her back, similar in effect to carrying around "200 pounds of stone" while suffering from back strain. He testified that his conclusion that Santos had been temporarily totally disabled from the time of her injury to early January 1985 was based upon her subjective complaints, accompanied by evidence revealed by examination which was consistent with mechanical instability, or improper muscle formation, of the back. It was his opinion that her back pain had been caused by the injury, superimposed upon the preexisting mechanical instability of her back. Although she had a functional overlay[5] that was not organic, "she definitely has a physical basis for presumed pain complaints...." He testified that he did not believe she was a malingerer.

Dr. Dennis had also had occasion to compare cervical x-rays of Santos taken by Dr. Linehan on May 18, 1984, shortly after her accident, with those taken later by Dr. Gunther on October 29, 1984. In the later x-rays, he had found evidence of degenerative changes which he thought were probably related to, though not completely caused by, the trauma of her injury.

The Director's statement that "[Dr. Dennis'] medical reports did not present adequate rationale which could support the conclusion that Claimant was disabled beyond June 4, 1984" is plainly wrong. *Santos v. Department of Employment Services, supra,* H & AS No. 84–428, Final Compensation Award, at 5. Granted, evidence also existed which would support a conclusion that Santos was not disabled beyond June 4. But it was not within the Director's authority to review *de novo* the evidence concerning this factual issue. *Dell, supra,* 499 A.2d at 105–07. Dr. Dennis' reports and testimony provided substantial evidentiary support for the Examiner's finding that Santos' disability extended beyond June 4. The Director's decision to ignore that evidence was reversible error. *Id.* at 109. We therefore remand the case to the Department for a determination of the date, after June 4, 1984, on which Santos' entitlement to temporary total dis-

---

5. "Functional overlay" refers to that element of a disturbance of function for which no organic cause can be found. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, *supra* note 1 at 531.

ability benefits may be deemed to have ended.

■ We do not direct the Director to simply reinstate the Hearing Examiner's proposed compensation order, however, because we find one aspect of that order to be legally defective. The Examiner found that Santos' disability ended on October 29, 1984, the day of her visit to Dr. Gunther. This factual finding was based entirely upon Dr. Gunther's deposition testimony that he had seen Santos enter a car unaided after purportedly having been unable to move about his examining room without the help of a companion. The Examiner found that Santos lost her claim to credibility on that date, so that her ensuing complaints to Dr. Dennis, and the latter's conclusions, which were based upon them, were unreliable.

We recognize the "general rule that on credibility questions, the factfinding of hearing officers is entitled to great weight." *In re Dwyer*, 399 A.2d 1, 12 (D.C.1979). The rationale for such deference is that the hearing examiner is in the best position to observe the demeanor of witnesses. *See* 3 K. DAVIS, ADMINISTRATIVE LAW TREATIES § 17.16, at 330 (2d ed. 1980). In this case, however, the

Examiner's finding of termination of disability depended neither on the demeanor of Drs. Dennis, Gunther, or Linehan, whose testimony was taken by deposition prior to the hearing, nor on Santos' demeanor as a witness. It was based solely on the incident reported by Dr. Gunther. We therefore owe less than the traditional deference to the Examiner's finding in this case. In our view, the testimony upon which the Examiner relied was no more than a scintilla of evidence, too insubstantial to support a finding that Santos' disability had terminated. *See* D.C. Code § 1–1510(a)(3)(E); 7 D.C.M.R. § 230.9 (1986).[6]

We note that the Hearing Examiner did not base his decision of the termination date of benefits on the medical opinion of Dr. Gunther versus that of Dr. Dennis. We express no view of how we would evaluate such a ruling had it been made. We merely hold on this aspect of the case that the scanty observation recounted by Dr. Gunther of Ms. Santos entering the car unaided is too slim a reed to bear the weight which the Hearing Examiner assigned it. The proper date for termination of benefits must be determined based on proper evidence.

---

**6.** Santos also contends on appeal that her employer's liability for medical expenses which she incurred due to her injury extended beyond the date she was capable of returning to work, whether that date was June 4, 1984, as the Director found, or October 29, 1984, as the Hearing Examiner found, or some later date.

We note that the fact that an employee is no longer eligible to receive disability benefits under D.C.Code § 36–308 (1981) does not necessarily preclude her from receiving reimbursement of medical expenses under D.C.Code § 36–307. The right to medical benefits is separate and distinct from the right to income benefits. 2 A. LARSON, THE LAW OF WORKMEN'S COMPENSATION § 61.11(b), at 10–773 (1987). Under our Workers' Compensation Act, medical benefits are not subject to the same limitations as are disability income benefits, but are to be furnished by the employer "for such period as the nature of the injury or the process of recovery may require." D.C.Code § 36–307 (1981). We find no indication in the language of the Act nor its legislative history that the D.C. Council intended to limit the employer's liability for medical services and supplies to the period of time during which the injured employee receives disability income compensation.

We are in agreement with the view held by the majority of jurisdictions which have addressed the issue, that medical benefits may continue even after the disability income benefits cease. *See* A. LARSON, *supra*, at 10–776–77 ("when the issue is whether medical benefits can continue after income benefits stop[, i]t is generally held that they can.") & cases cited n. 23; *see also Strachan Shipping Co. v. Hollis*, 460 F.2d 1108, 1116 (5th Cir.1972) (constructing the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.* 1982) (original version at ch. 509, 44 Stat. 1424 (1927)), *cert. denied*, 409 U.S. 887, 93 S.Ct. 114, 34 L.Ed.2d 144 (1972); *Glover v. Industrial Comm'n of Illinois*, 140 Ill.App.3d 361, 365, 92 Ill.Dec. 794, 797, 485 N.E.2d 605, 608 (1985); *Mitchell v. K–Mart Enterprises of La., Inc.*, 319 So.2d 826, 827 (La.App.1975); *Depue v. Barsh Truck Lines*, 493 P.2d 80, 83 (Okla.1972); *Deremer v. Workmen's Compensation Appeals Bd.*, 61 Pa. Commw. 415, 420, 433 A.2d 926, 929 (1981); *Kennecott Copper Corp. v. Anderson*, 30 Utah 2d 102, 105, 514 P.2d 217, 219 (1973). *But see Nardella v. Campbell Machine, Inc.*, 525 F.2d 46, 49 (9th Cir.1975).

*Reversed and remanded for proceedings consistent with this opinion.*

BELSON, Associate Judge, concurring:

I join in the court's opinion, and write separately to make a few additional observations about the testimony of Dr. Gunther and the findings the Hearing Examiner did base, and could have based, on that testimony.

As the court's opinion explains, the Hearing Examiner found that Santos lost her credibility on October 29, 1984. He based that finding on Dr. Gunther's deposition testimony about the manner in which Ms. Santos was able to enter a car unaided, which Dr. Gunther observed from a distance, as contrasted with Santos' professed inability to move without assistance in his examining room. I agree that Dr. Gunther's long distance observation was insufficient to bear the weight the Hearing Examiner assigned it.

There was, however, much more in Dr. Gunther's testimony concerning the events of October 29, 1984, that the Hearing Examiner could have used, but did not, to conclude that Ms. Santos was not credible. Dr. Gunther reported that Ms. Santos was quite uncooperative during the examination, specifically that she would not move any muscles for him although "obviously they were functioning." He based this opinion on the fact that she claimed doing most anything hurt her back terribly, and that all her muscles seemed weak upon testing. Yet, when he tested her reflexes with a rubber hammer, she demonstrated normal reflexes in both arms and legs. For this reason, Gunther "felt she was not weak." Dr. Gunther acknowledges that he was not "necessarily" able to make any determination with respect to her complaints based upon testing those reflexes. But the fact that she acted weak upon testing (she would not move any muscle for him), even though he concluded she was in fact not weak, bears upon Santos' credibility.

Similarly, Dr. Gunther conducted a straight leg raising test. He could straight raise each of Ms. Santos' legs to 90 degrees, but she said she had pain on the left side at 60 degrees. That constitutes a "subjectively positive straight leg raising test." According to Dr. Gunther,

[s]ometimes when you bring the leg up you can't get it up further and it's obvious that it's causing a lot of pain, sometimes it's not very obvious and you are relying on what the patient says.

I was going to say it's somewhat suspicious when you can go to 90 degrees although the patient says it hurts at some point.

Also, Gunther made a written report stating that the "[r]ange of motion in her neck was obviously not painful and was unimpeded while we talked, but once I made it clear that I was examining it she did not turn it very well and claimed to be limited by pain to 45 degrees rotation each way." Again, this reflects on Santos' credibility.

The totality of Dr. Gunther's observations affecting Santos' credibility as of October 29, 1984, if credited by the Hearing Examiner, was sufficient in my view to support a finding that her complaints were no longer reliable as of that date. As a ground for finding that the claimant's disability had terminated as of October 29, 1984, this is conceptually separate from Dr. Gunther's medical opinion itself. As the court's opinion notes, *ante* at 11, the Hearing Examiner did not base his decision regarding the termination date of benefits on Dr. Gunther's medical opinion. The Hearing Examiner has not yet weighed that opinion against the contrary opinion of Dr. Dennis. It is not for this court, but rather for the Hearing Examiner, to weigh the evidence surrounding both of these aspects of Santos' claim and make the findings of fact he deems appropriate.