**KOH SYSTEMS, et al., Petitioners,**

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent,**

**and**

**Paul G. Meinke, Intervenor.**

**No. 95–AA–260.**

District of Columbia Court of Appeals.

Submitted Sept. 10, 1996.

Decided Sept. 26, 1996.

Scott D. Austin, Washington, DC, was on the brief for petitioners.

Charles F.C. Ruff, Corporation Counsel, with whom Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of brief for respondent.

John G. Nalls, Rockville, MD, was on the brief for intervenor/respondent.

Before FERREN, TERRY, and REID, Associate Judges.

FERREN, Associate Judge:

KOH Systems and Royal Insurance Company, petitioners, contend on appeal that the Acting Director ("Director") of the Department of Employment Services ("DOES") erred in overruling the hearing examiner's decision that the applicable statute of limitations, D.C.Code § 36–314(a) (1993 Repl.), barred intervenor Paul G. Meinke's workers' compensation claim. The examiner concluded, and the Director disagreed, that Meinke's claim had been untimely filed because he had been aware more than a year before filing his claim that his injuries were work-related. We conclude that the Director did not err in ruling that the record failed to support a finding that Meinke was aware of the cause of his injury in January 1991, when the examiner imputed that awareness to him. However, we must remand the case for a ruling on an issue the Director overlooked: whether Meinke's claim was untimely on the alternative statutory ground that, "by the exercise of reasonable diligence," Meinke "should have been aware" more than a year before filing his claim that his injuries were work-related. *Id.*

## I.

On October 1, 1989, Paul G. Meinke began working at KOH Systems as a computer technician. His work principally involved the maintenance and repair of computers, printers, and fax machines; he also was engaged in computer programming and data entry. In January 1991, Meinke began to experience numbness and tingling sensations in his right hand and fingers while at work. Although at first these symptoms were not severe, they persisted over time and gradually became worse. Meinke nonetheless continued to work while often taking breaks to alleviate the pain. Even though Meinke gradually began to suspect that he was suffering from carpal tunnel syndrome, he did not seek medical attention primarily because he was averse to surgery involving his wrists.

On February 23, 1992, Meinke suffered injuries to his shoulder, back, and hands in an automobile accident. He sought medical treatment for those injuries from Dr. Joseph Y. Lin on March 4, 1992. Because of persistent numbness and tingling in Meinke's hands and wrists, he returned to Dr. Lin on July 10, 1992. Nerve conduction studies and an EMG revealed that Meinke suffered from bilateral carpal tunnel syndrome. Meinke informed KOH Systems of his injuries, and on July 22, 1992, KOH filed its "First Report of Injury or Occupational Disease" with DOES. KOH also hired Dr. Robert O. Gordon to conduct an independent examination of Meinke.

Meinke returned to Dr. Lin on September 9, 1992 because of progressively worse pain in his hands and wrists. Dr. Lin informed Meinke that his injuries were work-related and that surgery would be necessary to correct the condition. On November 17, 1992, Meinke filed for benefits under the District of Columbia Workers' Compensation Act of 1979, D.C.Code §§ 36–301 to 36–345 (1993 Repl.), seeking an award for the costs associated with surgery on his wrists and for temporary total disability benefits during the course of his recovery. KOH Systems defended on the ground that Meinke's injuries were not causally related to his employment and that his claim had not been filed within the applicable one-year statute of limitations specified in D.C.Code § 36–314(a).

After a hearing on September 7, 1993, the hearing examiner concluded—based on Meinke's testimony and on the medical reports of Dr. Lin—that Meinke suffered from carpal tunnel syndrome and that his work at KOH Systems was the source of his condition. The examiner also determined, however, that Meinke's claim had been untimely filed because Meinke had been "aware of his condition of carpal tunnel syndrome and its relation to his work activities as of January 1991," more than a year before filing his claim, "as was evident from his testimony at the hearing." The hearing examiner's conclusion, therefore, was based exclusively on Meinke's own testimony that he had had a "suspicion" when he began experiencing symptoms in January 1991 that his injury was work-related.[1]

---

1. At the September 7, 1993 hearing, Meinke testified as follows:

On February 15, 1995, the Director overruled the hearing examiner, concluding that there was "no evidence in the record that [Meinke] knew his injury was work related until September 9, 1992," when Dr. Lin so informed him. The Director accordingly concluded that Meinke's claim had been timely filed under D.C.Code § 36–314(a), and he remanded the case to the hearing examiner to address the merits of Meinke's claim. On March 10, 1995, petitioners filed a timely petition for review of the remand order.

## II.

### A.

■ Our standard of review is set forth under the District of Columbia Administrative Procedure Act, D.C.Code § 1–1510(a) (1992 Repl.), which empowers this court, among other things, to set aside agency findings and conclusions "[u]nsupported by substantial evidence," *id.* § 1–1510(a)(3)(E), or "[a]rbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," *id.* § 1–1510(a)(3)(A). *See Santos v. District of Columbia Dep't of Employment Servs.,* 536 A.2d 1085, 1088 (D.C.1988). In DOES appeals, our review is constrained to some extent by the roles assignable, respectively, to the hearing examiner and to the Director. Initially, the examiner investigates and rules on the case (sometimes with, sometimes without, a hearing), makes findings of fact and conclusions of law, and issues a compensation order granting or denying the claim. *See Dell v. Dep't of Employment Servs.,* 499 A.2d 102, 105–06 (D.C.1985). The Director then reviews the compensation order by applying the law to the facts. *See id.* at 105. Pursuant to applicable regulations, "[t]he Director shall affirm the compensation order if it is supported by substantial evidence in the record.'" *Id.* (quoting DOES Rule 3626.4 (published at 29 D.C.Reg. 5565

(1982))). The Director accordingly is bound by the examiner's findings of fact if supported by substantial record evidence. *See Santos,* 536 A.2d at 1088; *Dell,* 499 A.2d at 107. The Director reviews the examiner's conclusions of law de novo, however, since the Director has ultimate responsibility within the agency for interpreting the statute the agency administers. *See Harris v. District of Columbia Office of Worker's Compensation,* 660 A.2d 404, 407 (D.C.1995) (noting that examiner's interpretation of statute is entitled to less deference than Director's); *St. Clair v. District of Columbia Dep't of Employment Servs.,* 658 A.2d 1040, 1042–44 (D.C.1995) (per curiam) (sustaining Director's rejection of hearing examiner's interpretation of statute).

■ This court in turn reviews the Director's decision. Among other things, we consider whether the decision is supported by substantial evidence, *see* D.C.Code §§ 1–1509(e), 1–1510(a)(3)(E), making sure that the Director has accorded proper deference to the examiner's fact-finding role. *See Santos,* 536 A.2d at 1088. In contrast, we review the Director's legal conclusions de novo, keeping in mind, however, that when the statutory language is not entirely clear, we ordinarily defer to the Director's interpretation of the governing statute and the agency's own regulations. *See Daniel v. District of Columbia Dep't of Employment Servs.,* 673 A.2d 205, 207 (D.C.1996); *Harris,* 660 A.2d at 407; *Gunty v. Department of Employment Servs.,* 524 A.2d 1192, 1196 (D.C. 1987). Nonetheless, this court has the last word on the law because, ultimately, "the substantial evidence issue is an issue of law" and "the reviewing court has the greater expertise." *Dell,* 499 A.2d at 107 (internal quotation marks omitted). The Director's interpretation, therefore, is not entitled to controlling weight if it "conflicts with the

---

[Counsel for KOH]
 Q. Okay. So at that point [in January 1991] you knew that there was something wrong with your hands you believed that work was causing, is that correct?
[Meinke]
 A. I had that suspicion.
     *     *     *     *     *     *
[Counsel for Meinke]

Q. I believe that you testified in your cross-examination that when you first began to experience these symptoms [in January 1991] you could pretty much—and correct me if I'm wrong—pretty much guess or you had a suspicion that your injury was work related?
[Meinke]
 A. I had that suspicion.

statute, is inconsistent with the [governing] regulation, or otherwise is contrary to established legal doctrine." *Gunty,* 524 A.2d at 1196 (citations omitted).

This case requires us to focus first on the facts and then on the language of the statute. We must determine (1) whether the Director correctly concluded that the hearing examiner's compensation order lacked substantial evidentiary support in the record, and (2) whether the Director otherwise lawfully applied the statute in remanding the case to the examiner for a ruling on the merits of Meinke's claim.

### B.

■ D.C.Code § 36–314(a) requires the employee to file a workers' compensation claim within one year of the injury. The limitation period is triggered once the employee becomes "aware, or by the exercise of reasonable diligence should have been aware," that the injury is work-related.[2] Our first inquiry, therefore, is whether substantial evidence supported the hearing examiner's decision that Meinke had been aware, more than a year before filing his claim, that his injuries were work-related. *See George Hyman Constr. Co. v. District of Columbia Dep't of Employment Servs.,* 498 A.2d 563, 565–66 (D.C.1985). " 'Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Dell,* 499 A.2d at 108 (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). The Director is bound to accept the examiner's findings of fact if supported by substantial evidence "even though [he or she] may have reached a contrary result based on an independent review of the record." *Id.*

■ We agree with the Director that substantial evidence does not support the hearing examiner's determination. In reaching her conclusion, the examiner relied solely

upon Meinke's own testimony that he had had a "suspicion" in January 1991 that his hand and wrist discomfort was caused by his work. See *supra* note 1. Awareness, however, implies a "realization, perception, or knowledge" about the matter in question. WEBSTERS THIRD NEW INTERNATIONAL DICTIONARY 152 (1986). We agree with the Director that Meinke's mere unconfirmed suspicion, standing alone, was an insufficient basis for a finding that Meinke had been "aware" of the relationship between his injury and employment in January 1991.

The Director concluded:

There is no evidence in the record that claimant knew that his injury was work related until September 9, 1992 when Dr. Lin, claimant's physician, told him his injury was work related. There is a considerable amount of evidence in the record that claimant could have believed his injury was personal, and not work related. Employer's physician, Dr. Gordon, stated that no specific injury had ever occurred to claimant on the job. Dr. Gordon also stated that claimant was overweight, had a history of diabetes in his family, and had a systemic inflammatory condition. Combining those three conditions with the automobile accident claimant had on February 23, 1992, Dr. Gordon opined that the carpal tunnel syndrome claimant had, should not be considered related to claimant's work activities.

The Director, therefore, used Dr. Gordon's opinion—offered by petitioners to show no causal connection between Meinke's work and his injury—to demonstrate that Meinke should not be deemed to have known in January 1991 that his injuries were work-related. When we combine the Director's use of Dr. Gordon's and Dr. Lin's testimonies with Meinke's testimony that he had had only a "suspicion" of work-related carpal tunnel syndrome, we must say the Director correctly ruled that the hearing examiner's de-

2. D.C.Code § 36–314(a) provides in relevant part:

    (a) Except as otherwise provided in this section, the right to compensation for disability or death under this chapter shall be barred unless a claim therefor is filed within 1 year after the

injury or death.... The time for filing a claim shall not begin to run until the employee or beneficiary is aware, or by the exercise of reasonable diligence should have been aware, of the relationship between the injury or death and the employment.

termination was unsupported by substantial evidence.

### C.

█ This is not to say, however, that the Director was correct in concluding that Meinke's claim was timely filed under D.C.Code § 36–314(a). Our review of the record indicates that the Director's conclusion was legally defective. *See* D.C.Code § 1–1510(a)(3)(A). Neither the hearing examiner nor the Director focused on the alternative basis under § 36–314(a) for barring an untimely claim. Subsection (a) precludes a claim if the employee is "aware, *or by the exercise of reasonable diligence should have been aware*," more than one year before filing a claim, of the relationship between the injury and the employment. D.C.Code § 36–314(a) (emphasis added). The statute therefore incorporates not only a subjective but also an objective—"should have been aware"—standard. *See Sun Shipbuilding & Dry Dock Co. v. McCabe*, 593 F.2d 234, 239 (3d Cir.1979) (noting that "appropriate test for date of injury is not subjective, but objective," in context of identical provisions of federal Longshoremen's and Harbor Workers' Compensation Act); *see also Stark v. Washington Star Co.*, 266 U.S.App.D.C. 121, 123, 833 F.2d 1025, 1027 (D.C.Cir.1987) (same).

In properly rejecting and remanding the hearing examiner's determination, the Director did not remand for the hearing examiner to consider—before reaching the merits—whether Meinke, in the exercise of reasonable diligence, should have been aware more than a year before filing his claim that his injuries were work-related.[3] In this connection, Meinke's early suspicion that he suffered from carpal tunnel syndrome caused by his work at KOH Systems, when coupled with his conscious decision not to find out what was wrong with his right hand because he feared an operation, would appear to be significant. On the other hand, Dr. Gordon's and Dr. Lin's different opinions about whether Meinke's injury was work-related suggest that even the exercise of reasonable diligence might not have led to a clear enough awareness of the cause of that injury in time to bar Meinke's November 12, 1992 claim.

Because this court defers initially to agency interpretation of a governing statute it administers, *see Gunty*, 524 A.2d at 1196, we will remand this case to the Director to determine whether Meinke "should have been aware" of the relationship between his work activities and his injuries more than a year before filing his claim.[4] The Director accordingly will have to decide in the first instance how much legal guidance to give the hearing examiner in the Director's Order returning the issue for her further consideration. We therefore remand the case to the Director for further proceedings consistent with this opinion.

*So Ordered.*

---

3. The hearing examiner presumably failed to address this issue because it was unnecessary to decide in light of her ruling that Meinke had become aware in January 1991 that his injuries were work-related.

4. Although he failed to raise the argument before the hearing examiner, Meinke argues on appeal (as he did before the Acting Director) that D.C.Code § 36–332(f) tolls the limitations period. Subsection (f) provides that when an employer "has been given notice" or "has knowledge" of an employee's injury and "fails, neglects, or refuses" to file a report of the injury within the ten-day period established under § 36–332(a), "the limitations in § 36–314(a) shall not begin to run ... until such report shall be furnished." D.C.Code § 36–332(f). We are unable to discern the merits of the claim for the simple reason that there are no findings of fact, let alone anything of record, to suggest that KOH Systems had knowledge of Meinke's injury more than ten days before it filed its "First Report of Injury or Occupational Disease" on July 22, 1992. Although Meinke himself learned of his injury from Dr. Lin on July 10, 1992, there is no indication of when that information was conveyed to KOH Systems. *See Sun Shipbuilding*, 507 F.2d at 151 (applying Longshoremen's and Harbor Workers' Compensation Act and noting that employer's knowledge of injury required "at a minimum" to begin period for filing report).