731 A.2d 845 (1999)
WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Petitioner,
v.
DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent,
Warren Johnson, Intervenor.
No. 97-AA-576.
District of Columbia Court of Appeals.
Argued June 8, 1999.
Decided July 1, 1999.
*846 Alan D. Sundburg, Washington, DC, for petitioner.
Keith W. Donahoe, Greenbelt, MD, for intervenor.
Jo Anne Robinson, Principal Deputy Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of brief for respondent.
Before STEADMAN and SCHWELB, Associate Judges, and GALLAGHER, Senior Judge.
SCHWELB, Associate Judge:
The Washington Metropolitan Area Transit Authority (WMATA) has asked this court to review a decision of the Director of the Department of Employment Services (DOES) awarding workers' compensation benefits to claimant Warren Johnson, a former WMATA Metrobus driver. WMATA contends that the Director erroneously failed to credit WMATA for pension benefits paid by WMATA to Johnson under the employer's retirement plan. We affirm.

I.

THE PROCEEDINGS BEFORE THE AGENCY
Johnson was initially employed by D.C. Transit, WMATA's predecessor, on February 15, 1957. On October 25, 1990, a Metrobus operated by Johnson was struck by a private automobile operated by a drunk driver. Johnson sustained serious injuries to his lumbar and cervical spine, and he suffered carpal tunnel syndrome in his right wrist. The collision also aggravated Johnson's preexisting cervical disc disease and diabetic condition. As a result of his injuries, Johnson has not been able to return to his job with WMATA, nor has he engaged in any other gainful employment.
Following the accident, Johnson applied for workers' compensation. On December 11, 1991, a full evidentiary hearing was held on his claim. Almost two years later, on November 16, 1993, a DOES Hearing and Appeals Examiner issued a Compensation Order (Order No. 1) awarding Johnson temporary total disability benefits. In the meantime, Johnson had retired, and he had begun to receive pension benefits pursuant to a retirement plan negotiated by WMATA with Johnson's labor union.
WMATA filed a motion for modification of Order No. 1, arguing that WMATA was entitled to a credit for pension benefits that it had paid to Johnson. On July 7, 1995, a different Hearing and Appeals Examiner issued a second compensation order (Order No. 2) in which he held that WMATA was entitled to the requested credit pursuant to the provisions of D.C.Code § 36-308(9) (1997), which provided, at all times relevant to this appeal, as follows:
In no event shall the total money allowance payable to an employee or his dependent survivor(s): (1) As compensation for an injury or death under this chapter; (2) as federal old age, and survivors insurance benefits; and (3) from employee benefit plans subject to the *847 Employee Retirement Income Security Act of 1974 (26 U.S.C. § 401 et seq.) and such income maintenance plans solely funded by the employer (computed weekly) exceed in the aggregate the higher of 80% of the employee's average weekly wage or the total of federal payments and employee benefit plans payments. In the event the total aggregate money allowance payable to an employee or his survivor(s) exceeds this limitation, the amounts otherwise payable as compensation or death benefits under this chapter shall be reduced accordingly.[1]
Johnson filed an internal agency appeal, and on March 31, 1997, the Director issued a decision (Order No. 3) reversing Order No. 2. The Director held that the pension plan under which Johnson was receiving benefits was not "solely funded by the employer," as required by § 36-308(9), and that the benefit ceiling set forth in the statute was therefore inapplicable. WMATA filed a timely petition for review.

II.

JOHNSON'S PENSION PLAN AND OTHER BENEFITS
The relevant facts relating to WMATA's retirement plan are undisputed. From 1957 until 1983  a period spanning more than a quarter of a century  Johnson made contributions of two percent of his annual salary to the plan. These contributions totalled $23,714. Johnson claims that, if interest is added, he has contributed approximately $40,000 to the plan.
In 1983, WMATA amended its retirement plan to provide for employer funding of current contributions. From 1983 to 1986, the plan included a provision under which employees could be called upon to contribute to the retirement fund if its liabilities exceeded its ability to pay. This contingency did not arise and, in 1986, WMATA amended its plan to eliminate the contingent provision for contributions by employees. Since 1986, the retirement plan has provided for employer funding of all current contributions.
In light of the foregoing history, it is undisputed that at the time of Johnson's accident in 1990, he was no longer making annual contributions to the plan. Any benefits that the plan was paying out, however, were funded in part by contributions made by Johnson and by other employees prior to 1983.
In February 1994, Johnson began to receive social security retirement benefits. Thereafter, his weekly income was as follows:

 Workers' compensation: $ 516.26
 WMATA pension plan: 468.40
 Social security benefits: 253.15
 Total: $1,237.81

Johnson does not contest these figures, and the parties stipulated that his pre-injury average weekly wage was $987.46. It is therefore undisputed that Johnson's aggregate benefits exceed his former salary by more than $250 per week. Johnson thus receives substantially more than "the higher of 80% of the employee's average weekly wage or the total of federal payments and employee benefit plans payments." D.C.Code § 36-308(9).[2]

III.

LEGAL ANALYSIS
The only issue before us is whether WMATA's retirement plan is "solely funded by the employer" within the meaning of § 36-308(9). If we answer that question in the affirmative, then WMATA is entitled to the credit it has requested. If, on the other hand, we conclude that the plan *848 is not solely funded by WMATA, then we must affirm the decision of the Director.
Turning first, as we must, to the statutory language, see, e.g., James Parreco & Son v. District of Columbia Rental Hous. Comm'n, 567 A.2d 43, 45-46 (D.C. 1989), we conclude that Johnson has by far the best of the argument. The ceiling on benefits established in § 36-308(9) applies only where the plan in question is solely funded by the employer. As Johnson's counsel correctly points out in his brief, "[t]here simply is no dispute that the pool of money WMATA utilizes to meet its pension obligations includes the 26 years of Mr. Johnson's contributions as well as those of countless other WMATA employees." A payment source that contains large amounts of money contributed by employees is not "solely" funded by WMATA.[3]
WMATA contends that, as of the date of Johnson's accident, all of the current contributions to the retirement plan were being made by the employer. Therefore, according to WMATA, the plan was "solely funded by the employer" at the time critical to the disposition of this petition for review. In Order No. 2, the examiner accepted WMATA's position. In Order No. 3, however, the Director explicitly rejected it, observing that WMATA's construction would require her to "ignor[e] [the employee's] contribution to the retirement fund."
Even if we considered the statutory language ambiguous, any ambiguity would have to be resolved in conformity with the agency's consistent and reasonable interpretation. See, e.g., Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 & n. 11, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); KOH Sys. v. District of Columbia Dep't of Employment Servs., 683 A.2d 446, 449 (D.C.1996). As the Director pointed out in Order No. 3,
there is no agency precedent for the employer's interpretation of § 36-308(9). To the contrary, the Director has consistently strictly interpreted § 36-308(9) to apply only to claimant[s] whose pension plans are and were wholly and solely funded by the employer.
(Emphasis added; citations omitted.) This court's deference to the administrative construction of a statute which the agency is charged with administering is at its zenith when that construction is consistent and of long standing. See, e.g., Superior Beverages, Inc. v. District of Columbia Alcoholic Beverage Control Bd., 567 A.2d 1319, 1325 (D.C.1989) (citations omitted).
WMATA argues that Johnson suffered only one wage loss as a result of his accident and subsequent retirement, and it quotes a leading treatise:
The worker is experiencing only one wage loss, and, in any logical system, should receive only one wage-loss benefit.
9 ARTHUR LARSON & LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 97.10, at 18-9 (1999). As a general proposition, Professor Larson's observation is consistent with common sense, and his thesis is reflected in the legislative history of our worker's compensation statute:
The Bill provides that compensation benefits are to be reduced if the total amount of money received from Workers' Compensation benefits, from social security, from employee benefit plans, and from employer funded income maintenance plans, taken as a whole, exceed 80% of the employee's average weekly wage or the total of federal payments received by the employee. Thus assuring that no claimant will receive *849 more money for not working than he earns while working.

COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON HOUSING AND ECONOMIC DEVELOPMENT, REPORT ON BILL 3-106, THE DISTRICT OF COLUMBIA WORKERS' COMPENSATION ACT OF 1979, at 12 (January 29, 1980) (emphasis added). The language that we have italicized, however, identifies with some precision the basic purpose of the legislation, namely, to assure that the employee will not receive more money for not working than for working if, but only if, the sources of his benefits include an employer funded plan.[4] The legislative history essentially reflects the statutory language, and to expand the reach of the statute beyond the meaning of its words is a task suitable for the legislative branch rather than for the judicial one.
Affirmed.
NOTES
[1] On April 16, 1999, Subsection (9) was repealed in its entirety. See 46 D.C.Reg. 891, 894 (1999).
[2] WMATA also points out that, unlike his salary as a bus driver, Johnson's workers' compensation benefits are not considered gross income for purposes of the federal income tax. See 26 U.S.C. § 104(a)(1) (1994).
[3] Johnson cites Webster's definition of "solely": "(1) without another ... (2) to the exclusion of all else." WEBSTER'S NEW COLLEGIATE DICTIONARY 1097 (1979). Although courts should not "make a fortress out of the dictionary... it is useful to have one around." Riggs Nat'l Bank v. District of Columbia, 581 A.2d 1229, 1235 (D.C.1990).
[4] Other jurisdictions take different approaches. Colorado's workers' compensation statute, for example, requires that "[w]here the employee has contributed to the employer pension plan, benefits shall be reduced ... only in an amount proportional to the employer's percentage of total contributions to the employer pension plan." Colo.Rev.Stat. § 8-51-101(1)(d) (1973) (emphasis added). Thus, an employee's pension benefit is used to offset his or her workers' compensation benefits only to the extent of the employer's contributions to the pension plan.