COLUMBIA REALTY
VENTURE, Petitioner,

v.

DISTRICT OF COLUMBIA RENTAL
HOUSING COMMISSION,
Respondent.

TENANTS OF 1601 ARGONNE PLACE,
N.W., Petitioners,

v.

DISTRICT OF COLUMBIA RENTAL
HOUSING COMMISSION,
Respondent.

Nos. 89–567, 89–679.

District of Columbia Court of Appeals.

Submitted Feb. 26, 1990.
Decided April 9, 1990.

Eric Von Salzen, Jeanne M. Crouse, and Anna E. Blackburne were on the brief for petitioner in No. 89–567.

Eric M. Rome was on the brief for petitioners in No. 89–679.

Herbert O. Reid, Sr., Acting Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., filed a statement in lieu of brief for respondent.

Before BELSON, SCHWELB and FARRELL, Associate Judges.

PER CURIAM:

These are consolidated petitions for review of an order of the Rental Housing Commission (the Commission) upholding, in all respects here relevant, a hearing examiner's decision granting Columbia Realty Venture (the landlord) a hardship rent ceiling increase of 20.48%.[1] Each petitioner makes one primary argument. The Tenants of 1601 Argonne Place, N.W. (the tenants), intervenors below, contend principally that the hearing examiner erred in not requiring capitalization and depreciation of the repair and maintenance expenses that formed the basis of the landlord's hardship petition.[2] The landlord in turn contends that the examiner erred in treating as "extraordinary" operating expenses, permitting application of the two-year averaging formula set forth in decisions such as *Atlas General Partnership v. Bass Circle Tenants' Associates*, HP 4084 (RHC April 1, 1982), repair expenses listed in the hardship petition which the landlord maintains were

1. Ultimately, the Commission issued an order fixing the rent ceiling increase at 21.06%.

2. *See* 14 DCMR § 4209.10(g) (1989): "When adjudicating a hardship petition, the issues to be resolved may include the following: ... Wheth-

er expenses for maintenance and repairs are ordinary, capital or extraordinary and whether they should be fully charged to the reporting period or depreciated for their useful life."

part of a general upward trend in expenses related to the building in question, and thus were not outside the norm—or "extraordinary"—within the meaning of *Bass Circle*.[3]

We conclude that we cannot evaluate either of these contentions at this point. The Commission sustained both determinations of the examiner as legally correct and supported by substantial evidence in the record. With respect to the first determination (challenged by the tenants), however, the examiner made what appear to us to be irreconcilable findings. Although the Commission sought to harmonize these findings, we conclude that the proper course—on an issue of critical importance to both the tenants and the landlord—is to remand to the examiner for clarification of those findings. Similarly, with respect to the examiner's decision to average the expenditures for the last two reporting periods (challenged by the landlord), we conclude that a remand is also necessary. First, the examiner's decision to average these expenses presupposes that they are operating expenses, rather than capital improvements, and thus may be affected by the clarified findings the examiner makes with regard to capitalization. Second, in sustaining the examiner's decision to average the expenses, the Commission relied principally on its own conclusion from the record "that a large number of the repairs [generating the claimed expenses] were made in apartments that were intentionally held vacant as part of a rehabilitation plan." In their brief, however, the tenants now "concede that there is no evidence in the record to support that conclusion." In these circumstances, we conclude that the examiner should be given an opportunity to set forth with clarity the basis for his decision to average the repair expenses.

### A. Capital improvements versus repairs

■ The hearing examiner correctly defined the question as "how to treat the expenditures for repairs and painting performed during [the] reporting period." He also correctly perceived that, under the Commission's decision in *Bass Circle, supra*, improvements are generally treated as depreciable capital expenditures, and that "[t]he major test of whether expenditures should be capitalized is if the expenses are part of a plan to restore, recondition, or alter the property."[4] The examiner took note of—and even found "creditable and well-supported by the evidence"—the testimony of the landlord's expert, Mr. Durham, (1) that the expenses in question "represented normal, recurring repairs expenses for this housing accommodation that do not extend ... [its] useful life or increase its value," and (2) that the capital improvement plan which the landlord had undertaken "did not begin (except for emergency repairs and preparatory work) until *after* the reporting for this petition ..." (emphasis added). Yet, in the very next breath, the examiner stated that he was

> not convinced that the repair expenditures incurred during the reporting period did not enhance the value of the housing accommodation or extend its useful life. It is clear from the testimony of Mr. Durham that these [*sic;* there] exists a plan to renovate and upgrade the subject housing accommodation. Although Mr. Durham testified that the repair cost incurred was not part of the renovation plan, the Examiner finds that there has been an extraordinary increase in repair expenditures over the previous year during the same period *and is part of the Petitioner* [']*s plan to enhance the value of the property* and such expendi-

---

3. In *Bass Circle,* the Commission, quoting one of its previous decisions, summarized the extraordinary expenses rule as follows:
   > [W]here an extraordinary increase occurs in operating expenses that is not likely to recur, to avoid the undesirable result of an unusually high rent ceiling that may yield an excessive rate of return to the landlord in future years, the expense for maintenance, repairs

and painting for the two years reported should be averaged for the determination of the annual rate of return for the purpose of establishing a new rent ceiling.

4. Neither petitioner questions the validity of this test, and thus we assume its validity for present purposes.

tures are not likely to recur in the future. [Emphasis added.]

The examiner chose to treat the expenditures as operating expenses rather than capital improvements, but as extraordinary expenses under the averaging formula of *Bass Circle.*

In its Decision and Order, and again in denying the tenants' motion for reconsideration, the Commission grappled with the seeming inconsistency in the examiner's findings. It found the "bottom line" to be that

> [t]enants simply did not sustain their burden of showing that the expenditures were part of the capital improvements program covered by the capital improvement petition or that they were in themselves capital expenditures even if not associated with the work covered by the capital improvement petition.

To the Commission, the tenants' argument "seem[ed] largely divorced from the facts as testified to," since neither their own evidence nor their cross-examination of the landlord's witness "yield[ed] the evidence of massive renovation that they believed it would." However, the examiner had found it clear from Durham's testimony that "the[r]e exists a plan to renovate and upgrade" the property, and a natural reading of his order (whatever its grammatical deficiency cited by the landlord) is that the "extraordinary increase in expenditures ... is part of the Petitioner[']s plan to enhance the value of the property...."

Obviously, the repair expenses cannot be both "part of the plan" and not part of it. Although the Commission correctly recognized its duty to sustain the examiner's findings if supported by substantial evidence, *see* 14 DCMR § 3807.1 (1989), that duty presupposes unambiguity in the examiner's findings that is lacking in this record. It may well be, as the Commission implied, that the evidence favors a finding that the expenses were not part of the landlord's capital improvements plan. But the examiner's findings turned upon his evaluation of Durham's testimony, and in a similar context we have emphasized "the 'general rule that on credibility questions, the fact-finding of hearing officers is entitled to great weight....' " *Dell v. District of Columbia Dep't of Employment Servs.*, 499 A.2d 102, 106 (D.C.1985) (citation omitted). We thus conclude that, rather than the Commission and this court having to struggle to make sense of the examiner's findings, the proper disposition is for the Commission to remand the case to the examiner with instructions to clarify his findings with respect to the capitalization issue.

### B. Ordinary versus extraordinary repairs

■ A similar disposition is necessary with regard to the examiner's decision to average the expenses under the extraordinary expenditures rule of the *Bass Circle* case. First, this decision may be affected by the examiner's clarification of his findings with respect to capitalization. Second, assuming the examiner were to find—unambiguously—that the repair and painting expenses were deductible expenses and not capital improvements, he must further set forth the basis for his decision to average these expenses rather than permit their entire deduction in the reporting year. As indicated earlier, the confusion in the examiner's analysis led the Commission to supply a justification for the averaging decision which tenants concede is unsupported by the factual record. In these circumstances, we think the examiner should be required to state with clarity why he rejects the landlord's position that these repair expenses (assuming that is what they are) "reflect[ ] the established pattern"— rather than an isolated, non-recurrent increase—"of repairs expenses in this housing accommodation due to its age and the various stresses to which the building is subjected."

Accordingly, this case is remanded to the Commission with directions in turn to remand the case to the hearing examiner for further findings in accordance with this opinion. We reject the remaining conten-

tions of both the tenants and the landlord.[5]
*See* D.C.Code § 17–306 (1989).

---

**5.** Specifically, except as stated otherwise in our opinion, we reject the tenants' argument that the examiner failed to make adequate findings of fact and conclusions of law on the contested issues, and that the application of a two-year—rather than the tenants' proposed three-year— averaging formula was an abuse of discretion. Similarly, we reject the landlord's claim that the Commission erred in disallowing, for lack of adequate proof, the landlord's deduction of legal expenses incurred during the reporting period.