Melvin A. GUNTY, Petitioner,

v.

**DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.**

No. 86–653.

District of Columbia Court of Appeals.

Argued Feb. 12, 1987.
Decided April 27, 1987.

James K. Kearney, Washington, D.C., for petitioner.

Michael A. Milwee, Washington, D.C., for respondent.

Before PRYOR, Chief Judge, and FERREN and TERRY, Associate Judges.

FERREN, Associate Judge:

Petitioner, Melvin A. Gunty, seeks review of a Department of Employment Services (DOES) order denying his claim for unemployment benefits. Because the Director improperly rejected the hearing examiner's factual findings, we must reverse and remand for further proceedings.

## I.

Between 1980 and 1985, Gunty had a permanent, part-time position as an accounting assistant at the Police Executive Research Forum. His responsibilities included preparing monthly summary sheets for the payroll, making bank deposits, maintaining various fiscal records, and performing miscellaneous other tasks. A deputy claims examiner initially determined that Gunty was eligible for unemployment benefits because he had "resigned under imminent threat of termination"; in effect, he had been fired. The employer appealed, 7 DCMR § 306.1 (1986), claiming that Gunty had voluntarily quit without good cause connected with the work, 7 DCMR § 311.1 (1986).

At the hearing on August 27, 1985, Gunty testified that since the beginning of 1985 his supervisor, Lester Taylor, had "taken every opportunity he can to harass me." For example, Gunty claimed that Taylor would demand that he provide a written accounting of his work by a certain time. When Gunty supplied such a report, it would lie on Taylor's desk unreviewed for several days. According to Gunty, this occurred almost every month. Gunty also testified that whenever Taylor became frustrated about something he would require Gunty to write a summary of what he had done the previous week. Taylor would look at these reports but make no comment. Gunty said that he felt insulted because he had worked for the employer for a number of years and, before 1985, had not been subjected to similar requirements. Gunty further testified that he had complained about this treatment on several occasions to the employer's management committee. Gunty added that he had informed his supervisor he would not answer such questions in the future because he considered them degrading.

Matters came to a head on July 10, 1985 when, according to Gunty, Taylor once again told him to write down what work he had done the previous week. Gunty responded that he had already told Taylor he would not answer such questions. At this point, according to Gunty, Taylor began to shout at him. Taylor said that he was the controller and that if Gunty did not like it he could leave. Believing he had been fired, Gunty went to the office of the Assistant to the Executive Director and recounted what had happened. Taylor accompanied him and denied the firing. Gunty was instructed to go home and "cool off" until the following Monday. Gunty returned to work for one week but, on July 18, submitted a note stating he would return on July 26 to pick up his final check.

According to Gunty, he had subsequent discussions with the management committee about a possible return to work. Gunty testified that one of the committee members agreed that it was degrading, and thus inappropriate, for Gunty to have to write down what he had done the previous week. Although management, according to Gunty, apparently was willing to have him return to work, Taylor's objections, he believed, prevented his doing so. On July 22, Gunty was informed that he could not return to work. Gunty also testified that he had suffered health problems, including depression, as a result of Taylor's harassment, but he admitted he had not provided his employer with doctor's certificates substantiating these claims. *See* 7 DCMR § 311.7(e) (1986) (illness or disability caused or aggravated by work constitutes good cause to leave, provided claimant "has previously supplied the employer with a medical statement").

Gunty called one other witness, a co-worker, Elizabeth Camelo, to corroborate his account of the argument with Taylor on July 10. Camelo, however, testified that she had not been able to hear precisely what had occurred after Gunty and Taylor had entered Taylor's office. She had heard the word "leave" but could not place it in a more precise context. Gunty also submitted the statement of another co-worker, William Spelman. This statement indicated that on July 12 Camelo had come into Spelman's office and told him that, two days earlier, Gunty and Taylor had had an argument in which she had heard Taylor tell Gunty: "If you don't like it ... you can leave."

In contrast with Gunty's story, his supervisor, Taylor, testified that over the course of 1985 Gunty's attitude and work performance had significantly deteriorated. Taylor cited specific problems, including Gunty's taking more annual leave than he was allowed, his failure to send out bills promptly, and his failure to make important bank deposits. Taylor also testified that he had done his utmost to deal with these problems in an informal manner without jeopardizing Gunty's job; he had restricted discipline to oral reprimands. As to the July 10 incident, Taylor said Gunty was the one who had acted in a hostile manner. July 10 was Taylor's first day back at work after a two week vacation. He characterized his request as "simply asking [Gunty] for a progress report." When Gunty became hostile, the two of them entered Taylor's office for further discussions. According to Taylor, he explained to Gunty why he needed a progress report, given his own responsibility for ensuring that work was done. He added that Gunty walked out of Taylor's office after Taylor had repeated his request for an update on Gunty's work. Taylor also stated that he was willing to try to work things out but that Gunty did not want to cooperate. He denied firing Gunty. On July 17, however, Taylor did write a detailed memorandum describing Gunty's alleged "dereliction in his duties" the day before, when Gunty failed to make a bank deposit despite a specific request to do so.

The employer also called Gunty's replacement, Rodney Byrd, to testify. Byrd stated that he had found numerous errors in how the accounts had been kept. The employer also presented evidence that Taylor did not have the authority to fire Gunty and that an employee could not be fired without following certain procedures, which had not been initiated as to Gunty.

In his order the appeals examiner, in contrast with the claims examiner, concluded that Gunty had left his job voluntarily "rather than being subjected to constant harassment from employer's controller." But, like the claims examiner, he awarded Gunty benefits; the appeals examiner ruled that such harassment constituted good cause for leaving the job within the meaning of the Unemployment Compensation Act. Although the appeals examiner summarized the testimony of all the witnesses, it is readily apparent that he substantially credited Gunty's version of the events:

In the instant case, claimant testified that he attempted to resolve his situation by trying to talk with his supervisor about his concerns. However, the situation did not change. Claimant testified that he made several complaints to the executive committee about his controller's treatment towards him. However, the committee failed to correct the situation. Claimant nevertheless, endured his employer's controller's harassment and other conduct for approximately six (6) months, hoping that the situation would improve. When it did not, claimant quit his position. This is what a reasonable and prudent person in the labor market would have done.

The employer appealed again, this time to the Director of the Office of Appeals and Review. 7 DCMR § 309.1 (1986). The Director issued an order reversing the appeals examiner's decision and disqualifying Gunty from receiving unemployment benefits. In relevant part the order stated:

In the instant case, the employer has presented evidence sufficient to support a finding that the claimant's leaving his last work was voluntary. The claimant, however, has failed to present evidence

sufficient to support a finding of good cause connected with the work for the claimant's voluntary leaving.

The claimant's allegations of harassment by the employer's controller are not supported or corroborated by any reliable evidence or testimony on record....

The claimant has failed to establish good cause connected with the work for his voluntarily leaving his last work. It must be concluded the claimant left his last work because of general dissatisfaction with the work.

Petitioner filed a timely notice of appeal. D.C.Code § 46–113 (1981); 7 DCMR §§ 310.1, 310.2 (1986).

## II.

Gunty advances two arguments on appeal; only one merits discussion.[1] Although presented as part of an argument that the Director's ruling is "not supported by substantial evidence in the record," the gravamen of petitioner's complaint is that the Director, in concluding that Gunty did not leave his job for good cause connected with the work, impermissibly refused to credit the appeals examiner's factual findings. Specifically, Gunty argues that the Director "abused [her] discretion by refusing to consider Mr. Gunty's testimony concerning harassment ... [and] by substituting [her] own judgment of the reliability of Mr. Gunty's testimony for that of the Appeals Examiner." Fundamentally, therefore, Gunty asserts that the Director is limited to a substantial evidence review premised on deference to the appeals examiner's factual findings.

DOES has two responses. First, DOES argues that the Director did not reject the appeals examiner's factual findings; rather, the Director determined, as a matter of law, that Gunty's allegations do not reflect harassment sufficient for good cause to leave the job. Alternatively, DOES contends the Director need not accept the factual findings of the appeals examiner; the Director is the ultimate factfinder, with power to substitute her judgment for that of an examiner on disputed facts.

## A.

We must first determine the basis for the Director's decision to disqualify Gunty. As we read the record, DOES' first response is incorrect. We agree with Gunty that, in reaching her decision, the Director did overrule the appeals examiner's factual findings. The Director concluded that Gunty "has failed to present evidence sufficient to support a finding of good cause connected with the work for [his] voluntary leaving." But, instead of premising that conclusion on a legal determination that the type of harassment alleged did not constitute good cause, the Director supported her conclusion by noting that Gunty's "allegations of harassment by the employer's controller are not supported or corroborated by any reliable evidence or testimony of record." The Director, therefore, expressly disregarded Gunty's own testimony which the appeals examiner clearly had credited. The Director focused some attention on the July 10 incident, but she relied exclusively on the testimony of Taylor and the employer's other witness, Byrd, whose testimony she erroneously summarized.[2]

---

1. Gunty's first contention can be disposed of summarily. He argues, as the deputy claims examiner had concluded, that he did not voluntarily leave his job. The appeals examiner concluded, however, that Gunty had voluntarily quit, but with good cause. Gunty did not appeal this voluntariness ruling to the Director, who argues that this issue, therefore, has not been preserved for our review. Even if we assume that this question is properly before us, however, we conclude that Gunty's argument has no merit. Substantial evidence of record supports the conclusion that the employer sustained its burden of showing Gunty voluntarily left his job. The question is whether he did so with, or without good cause connected with the work—

an issue on which Gunty has the burden of persuasion.

2. The Director wrote:
Concerning the July 10, 1985 incident, the employer's controller testified he merely requested the claimant to submit to him a progress report, detailing what work the claimant had been working on during the controller's two-week vacation so the controller could determine office priorities. The employer's accounting assistant testified progress reports were often requested by the controller from the accounting staff in the normal course of business. It must be noted the

She altogether ignored the appeals examiner's finding that the July 10 incident was the culmination of a series of instances where Gunty had suffered harassment. Taken in its entirety, the Director's decision can only be read as a repudiation of the appeals examiner's factual findings as to Gunty's treatment during the six months before his departure from the job.

In short, the appeals examiner resolved the credibility contest in Gunty's favor, whereas the Director, substituting her own judgment, accepted as true the testimony of the employer's witnesses.

### B.

We therefore must assess the proper relationship between an appeals examiner's factual findings and the Director's review responsibilities. We recognize, first, that ordinarily we must defer to an agency's interpretation of the governing statute, as well as its own regulations. That interpretation is entitled to controlling weight unless it conflicts with the statute, *MCM Parking Co. v. District of Columbia Department of Employment Services,* 510 A.2d 1041, 1043–44 (D.C.1986), is inconsistent with the regulation, *Dell v. District of Columbia Department of Employment Services,* 499 A.2d 102, 106 (D.C.1985) (quoting *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)), or otherwise is contrary to established legal doctrine, *id.* at 106–07. We conclude that in this case, because DOES' interpretation of the statute and regulations is contrary to established legal doctrine, it cannot stand.

We begin with the relevant statute and regulations themselves. D.C.Code § 46–112(e) (1981) provides in the relevant part:

An appeal tribunal, after affording the parties reasonable opportunity for fair hearing, shall, unless such appeal is withdrawn, affirm or modify the finding of facts and the initial determination. The parties shall be duly notified of the decision of such appeal tribunal, together with the reasons therefor. The Board, under regulations prescribed by the Council of the District of Columbia, may permit further appeal by any party or may, upon its own motion, affirm, reverse, or modify the decision of the appeal tribunal or may set it aside and order a rehearing or the taking of additional evidence before the same or a different tribunal.

Next, 7 DCMR §§ 309.1, 309.4, and 309.5 (1986) provide:

309.1　In accordance with § 11(e) of the Act [D.C.Code § 46–112(e) (1981)], a party may petition the Director for reconsideration of the decision of a hearing examiner.

\*　　\*　　\*　　\*　　\*　　\*

309.4　Upon receipt of a petition for reconsideration, the Director shall consider all matters presented by the record and decision, and on the basis of the consideration, the Director shall affirm, reverse, or modify the prior decision.

309.5　The Director may set the decision aside and order a rehearing or the taking of additional evidence before the same hearing examiner, a different hearing examiner, or the Director.

Quoting the statute and citing the regulations, DOES contends that the Director need not defer to the appeals examiner's credibility determinations in resolving questions of fact. We disagree.

On their face the statute and regulations do not indicate what restrictions, if any, apply to the Director's consideration of an appeals examiner's credibility determinations. That the Director may "affirm, reverse, or modify" the decision is undisputed, but this general grant of authority pro-

---

controller was the claimant's immediate supervisor, and such a request for a progress report was within the scope of the controller's duties and responsibilities. There appears to be no justification for the claimant's refusal to submit the requested progress report.

The only "accounting assistant" to whom the Director could have been referring was Gunty's successor, Byrd. There is not one word in Byrd's testimony, however, on the subject of "progress reports ... requested by the controller from the accounting staff in the normal course of business."

vides no guidance in determining whether the Director has authority to ignore, or a duty to accept, the examiner's factual findings. Similarly, the Director's authority to set the appeals examiner's decision aside and to order the taking of additional evidence contains no suggestion as to whether she may overrule factual findings based on the Director's own evaluation of the record.

To give content to these regulations, therefore, the agency and this court must look to well established principles of administrative law. As we stated in *Dell*, 499 A.2d at 106:[3]

> Traditionally, a hearing examiner's decision has been entitled to greater consideration if the examiner, as in this case, has heard live testimony and observed the demeanor of the witnesses. "The significance of [the hearing examiner's] report ... depends largely on the importance of credibility in the particular case." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 496 [71 S.Ct. 456, 468, 95 L.Ed. 456] (1951). Stated differently, the decisions of a hearing examiner are to be "given special weight when they depend upon demeanor of witnesses." 3 K. Davis, Administrative Law Treatise § 17.16, at 330 (2d ed. 1980). This court has also recognized the "general rule that on credibility questions, the factfinding of hearing examiners is entitled to great weight...." *In re Dwyer*, 399 A.2d 1, 12 (D.C.1979).

*Accord, George Hyman Const. Co. v. District of Columbia Department of Employment Services*, 498 A.2d 563, 566 (D.C. 1985) ("A hearing examiner's decisions are especially weighty when they involve credi-

bility determinations."); *Arthur v. District of Columbia Nurses' Examining Bd.*, 459 A.2d 141, 146 (D.C.1983) (quoting *In re Dwyer*, 399 A.2d 1, 12 (D.C.1979)).

■ Unless a statute or administrative regulations fairly express an intention to modify the common law, including traditional principles of administrative law, they should not be interpreted to do so. *See Dell*, 499 A.2d at 107. We cannot say that D.C.Code § 46–112(e) (1981) or the DOES regulations concerning second level appeals within the agency fairly express a repudiation of the sound principle that due deference must be accorded the credibility determinations of the examiner who heard and evaluated the evidence. We applied this analysis in *Dell*, holding that, in the context of the Director's review of the credibility determination of a hearing examiner in a workers' compensation case, such determinations may only be rejected if they are unsupported by substantial evidence. The same analysis is appropriate here.

Furthermore, the District of Columbia Administrative Procedure Act (DCAPA) does not contain the language of the federal Administrative Procedure Act, which provides that, when an agency reviews decisions of a hearing examiner, it has "all the powers which it would have in making the initial decision...." *Id.* (quoting 5 U.S.C. § 557(b) (1982)). We have previously intimated that the omission of this language from the DCAPA "was the product of a conscious choice by Congress." *Id.* at 107 n. 5 (citing *District of Columbia Hospital Ass'n v. Barry*, 498 A.2d 216, 219 (D.C.1985)).[4]

---

3. We are unpersuaded by DOES' argument that our decision in *Dell* is irrelevant here. DOES argues that *Dell* is inapplicable because it concerned the standard by which the Director may review the findings of a hearing examiner in a workers' compensation hearing, where DOES regulations expressly provide that the Director must affirm the compensation order if it is supported by substantial evidence in the record. Although it is true that the employment regulations contain no parallel provision, an interpretation of the workers' compensation regulation itself was only one part of *Dell's* analysis. The second part of the opinion, relying on longstanding administrative law principles, is as rel-

evant here because the statute and applicable regulations themselves provide no guidance.

4. DOES urges us to adopt the approach of the Pennsylvania Supreme Court in *Peak v. Commonwealth of Pennsylvania Unemployment Compensation Board of Review*, 509 Pa. 267, 501 A.2d 1383 (1985). The court held in *Peak* that the Board is the "ultimate finder of fact" and, as such, is not bound to accept a referee's credibility determinations in resolving questions of disputed fact. *Id.* at 275–278, 501 A.2d at 1388–89. The decision in *Peak*, however, is of marginal relevance because there are fundamental differences between basic premises of Pennsylvania and District of Columbia administrative law,

■ If we were to accept DOES' argument that the Director can make her own credibility findings based upon a reading of the record, we would essentially scrap the principle of deference to the examiner who actually hears the testimony and is in the best position to make such determinations. We are not willing to do so. We conclude that the Director may not reject an appeals examiner's findings of disputed fact based on a resolution of witness credibility unless the examiner's findings are unsupported by substantial evidence.

### III.

■ We now must determine whether the Director's decision to reject the appeals examiner's evaluation of Gunty's allegations of harassment can be sustained on the ground that the examiner's findings are unsupported by substantial evidence. This presents an issue of law, which this court is in a position to address without need for deference to the agency's (in this case the Director's) decision. *Dell*, 499 A.2d at 107; *George Hyman Const. Co.*, 498 A.2d at 565–66; *Saah v. District of Columbia Board of Zoning Adjustment*, 433 A.2d 1114, 1116 (D.C.1981).

In countless decisions, this court has defined "substantial evidence" to mean "more than a mere scintilla. It means such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Washington Post Co. v. District of Columbia Unemployment Comp. Bd.*, 377 A.2d 436, 439 (D.C.1977) (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). In rejecting the appeals examiner's factual findings, the Director stated only that Gunty's allegations were "not supported or corroborated by any reliable evidence or testimony on record." That is not true. A review of the record clearly establishes that substantial evidence supports the appeals examiner's finding that Gunty's supervisor had harassed him over a period of six months before his departure from the job. Gunty and his supervisor, Taylor, presented essentially contradictory versions of the events leading up to Gunty's departure in July 1985. Almost any factual finding by the appeals examiner necessarily turned on whether he believed Gunty or Taylor, for neither party presented other significant testimonial or documentary evidence. Neither Gunty's nor Taylor's version of the alleged harassment is compelling or, on the other hand, inherently implausible, and thus either, if believed, would have supplied substantial evidence in support of a decision for Gunty or for the employer, respectively. *See Green v. District of Columbia Department of Unemployment Services*, 499 A.2d 870, 877–78 (D.C.1985).[5] The appeals examiner was not

respectively. In addressing the question of the extent to which an agency is bound by the credibility determinations of hearing examiners, Pennsylvania courts start from the premise that, "[a]bsent a [statutory or regulatory] requirement that the agency head is bound by the decision of the hearing examiner, the agency head is free to make his [or her] own determination and findings subject to [judicial] review...." *Fitz v. Intermediate Unit #29*, 43 Pa.Commw. 370, 376, 403 A.2d 138, 141 (1979) (citing Pennsylvania administrative law). In the District of Columbia, in contrast, we start from the premise that the factual findings of the examiner who heard the testimony are entitled to great weight. Additionally, in Pennsylvania the unemployment compensation hearing examiners are considered "agents" of the Board, not independent factfinders. This approach, severely limiting the role of the hearing examiner, has not been adopted in the District of Columbia. Finally, we note that, even as the Pennsylvania Supreme Court held that the Board is not restricted in its evaluation of hearing examiners'

credibility determinations, the court acknowledged that, as a matter of policy, "[i]t may be wiser, more efficient or more expedient to entrust administrative determinations of fact based on credibility to the person who hears the evidence." *Peak*, 509 Pa. at 278, 501 A.2d at 1389.

5. We note, in passing, that this is not a case where crediting Gunty's version of events depends solely on uncorroborated and otherwise unreliable hearsay. While Gunty did submit a document consisting of hearsay evidence, this document merely corroborated his own testimonial account of what had transpired on July 10. Gunty's sworn testimony directly addressed the factual issues in dispute and thus constituted substantial evidence for the hearing examiner's factual conclusions. *Cf. McLean v. District of Columbia Department of Employment Services*, 506 A.2d 1135, 1137–38 (D.C.1986) (petitioner's sworn testimony cannot be refuted solely by legally insubstantial hearsay evidence).

required to explain why he favored one witness over another. *See Monaco v. District of Columbia Board of Zoning Adjustment,* 409 A.2d 1067, 1070 (D.C.1979); *Arthur,* 459 A.2d at 146–47. According great weight to the credibility determinations of the appeals examiner, we cannot say that his factual findings of harassment are unsupported by substantial evidence. The Director's rejection of those findings, therefore, cannot be sustained.

## IV.

While we reverse the Director's decision, we do not remand for reinstatement of the appeals examiner's decision declaring petitioner eligible for unemployment benefits. Rather, we remand for the Director to consider whether, accepting the factual findings of the appeals examiner, Gunty has established good cause for voluntarily leaving his job. Gunty claims, and the appeals examiner agreed, that the employer's actions amounted to harassment providing good cause within the meaning of the Unemployment Compensation Act. *See* 7 DCMR §§ 311.1, 311.5 (1986). The Director has not yet ruled on this issue.

We observe that DOES regulations do not specifically address whether the type and level of harassment by the employer in this case constitute good cause for an employee to leave. The relevant regulation directs the Director to determine what constitutes good cause "based upon the facts in each case," with the test being how would a "reasonable and prudent person in the labor market" act in the same circumstances. 7 DCMR § 311.5 (1986). A non-exclusive list includes racial and sexual harassment as examples of reasons that do constitute good cause for leaving. 7 DCMR § 311.7(a) & (b) (1986). We leave it to the Director to determine whether Gunty has shown good cause in this case, subject to the right of judicial review.

*Reversed and remanded.*