**DISTRICT OF COLUMBIA, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.**

**Carol Y. RICHARDSON, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.**

Nos. 92–AA–1320, 92–AA–1429 *.

District of Columbia Court of Appeals.

Argued March 8, 1994.
Decided April 28, 1994.

* At oral argument counsel for Richardson withdrew this appeal.

1040

Edward E. Schwab, Asst. Corp. Counsel, with whom John Payton, Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, were on the brief, for petitioner District of Columbia.

John Harmon entered an appearance for petitioner Carol Richardson.

Charles E. Crosby for respondent.

Before KING and SULLIVAN, Associate Judges, and MACK, Senior Judge.

KING, Associate Judge:

Petitioner, the District of Columbia ("the employer"), challenges the decision by the Acting Chief of the Office of Appeals and Review ("OAR") of the Department of Employment Services ("DOES"), reversing the appeals examiner's denial of unemployment benefits to a former employee. On appeal, the employer contends that OAR erred when it rejected the appeals examiner's finding that the employee was not eligible for unemployment compensation benefits based on the employee's misconduct. We agree and reverse and remand.

### I.

On January 4, 1991, Carol Y. Richardson ("the employee") was terminated from her position as an audit assistant with the Adjustment and Review Unit, Tax Processing Administration for the District of Columbia Department of Finance and Revenue. The employee was discharged for misuse of her official position by using confidential information, gained through her audit assistant duties, to obtain District of Columbia personal income tax refunds she was not entitled to receive.

The employee sought and was denied unemployment compensation benefits by a DOES claims examiner because she had been terminated for misconduct. *See* D.C.Code § 46–111(b) (1990). The employee appealed that determination, and a hearing was held before appeals examiner, John Bockius, on April 10, and continued on May 2, 1991. At the hearing, the employee admitted that she had purposefully filed falsified personal income tax returns, which she knew would not be challenged because of the city's tolerance policy.[1] She claimed, however, that she was not guilty of misconduct because her supervisors condoned the submission of falsified tax returns that were within the tolerance. A former co-worker, Delores Yates, also testified that the supervisors had condoned the misuse by the employees of the tolerance policy. Both the employee and Yates testified that Romie Grady, their supervisor at Adjustment and Review, in explaining the tolerance policy to them and other employees, had said that the employees could use their knowledge of the policy at their discretion. The employee also testified that Grady's predecessor had made comments similar to those attributed to Grady, essentially stating that employees should use their own discretion in deciding whether to take advantage of the tolerance policy.

The employer presented testimony that the employee knew of the tolerance policy, and an examination of the tax returns of the employee revealed she took advantage of that policy. There was also evidence that the employee's duties included the reviewing of personal income tax returns filed by others; performing audits of the returns; assessing unpaid taxes, penalties, and interest; and authorizing refunds. The employee's position required that she have knowledge of tax laws and the tolerance policy. Finally, Grady denied ever making any statements advising or suggesting that employees could

---

1. The tolerance policy is a cost savings measure used by the District of Columbia to reduce the number of tax returns to be audited. If a detect- ed error on a personal income tax return is within the tolerance level, the return will not be audited.

use their knowledge of the tolerance policy for their personal benefit.

The employer also introduced relevant excerpts from the Personnel Manual containing personnel regulations regarding misuse of information, the position description for an audit assistant, the employee's tax returns showing that she claimed a refund that was in excess of what she was entitled to receive but with a discrepancy within the tolerance policy, and two documents signed by the employee concerning confidentiality guidelines.

The appeals examiner ruled that the employee knew about the tolerance policy and used it dishonestly for her own personal gain. The examiner further concluded that the statements by Grady [2] and the former supervisor, regarding the tolerance policy, "do not rise to the level of condonation ... [the employee] was clearly aware that her actions amounted to misuse of her official position as an audit assistant." Based on those findings, the appeals examiner held that the employer had sustained its burden and the employee was properly "discharged for intentional dishonesty and hence misconduct, within the meaning of the District Unemployment Compensation [L]aw."

OAR Acting Chief Ronald G. Perkins reversed on appeal, concluding that the employer had failed to sustain its burden in proving misconduct and that the hearing examiner's decision was not supported by substantial evidence. The employer then petitioned this court seeking reversal of the OAR ruling.

## II.

An employee who has been discharged for misconduct occurring in the course of his or her most recent work may be denied unemployment compensation benefits. See D.C.Code § 46–111(b)(1). In reviewing a final decision of DOES, relating to a finding of misconduct, our role is limited. We will not "disturb a decision if it rationally flows from the facts relied upon, and those facts or findings are substantially supported by the evidence of record." *Jadallah v. District of Columbia Dep't of Employment Servs.,* 476 A.2d 671, 675 (D.C.1984) (citation and internal quotation marks omitted). In the instant case, however, OAR's rejection of the appeals examiner's decision cannot be sustained.

When OAR reviews an appeals examiner's decision, "due deference must be accorded the credibility determinations of the examiner who heard and evaluated the evidence." *Gunty v. Dep't of Employment Servs.,* 524 A.2d 1192, 1197 (D.C.1987). The rationale for such deference is that the appeals examiner is in the best position to observe the demeanor of the witnesses. *See Dell v. Dep't of Employment Servs.,* 499 A.2d 102, 106 (D.C.1985) (citing 3 K. DAVIS ADMINISTRATIVE LAW TREATISE § 17.16, at 330 (2d ed. 1980)). OAR "may not reject an appeals examiner's findings of disputed fact based on a resolution of witness credibility unless the examiner's findings are unsupported by substantial evidence." *Gunty, supra,* 524 A.2d at 1198. The requirement of substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Washington Post Co. v. District Unemployment Compensation Bd.,* 377 A.2d 436, 439 (D.C.1977) (citations and internal quotation marks omitted).

Moreover, OAR may not substitute its judgment for that of the appeals examiner unless the evidence is inherently unreliable, because if "the Director can make [his or] her own credibility findings based upon a reading of the record, we would essentially scrap the principle of deference to the examiner who actually hears the testimony and is in the best position to make such determinations." *Gunty, supra,* 524 A.2d at 1198. Thus, in this case, OAR lacked authority to reject the appeals examiner's resolution of witness credibility and was bound by the examiner's findings of disputed fact unless they were unsupported by substantial evi-

---

**2.** The appeals examiner did not formally resolve the conflict between the testimony of the employee and Yates on the one hand, and Grady on the other, regarding what, if anything, the latter had said in response to questions by employees about whether they could make use of the tolerance on their own personal income tax returns.

dence. Moreover, OAR is bound by the factual findings supported by substantial evidence even if OAR would "have reached a contrary result based on an independent review of the record." *Santos v. District of Columbia Dep't of Employment Servs.*, 536 A.2d 1085, 1088 (D.C.1988) (citation and internal quotation marks omitted).

### III.

■ We now must determine whether the rejection of the appeals examiner's findings by OAR can be sustained on the basis that the appeals examiner's findings are not supported by substantial evidence. "This presents an issue of law, which this court is in a position to address without need for deference to [OAR's] decision." *Gunty, supra,* 524 A.2d at 1198 (citations omitted). *See also Dell, supra,* 499 A.2d at 107 (since substantial evidence is an issue of law, the agency decision is accorded less deference because reviewing court has greater expertise) (citations omitted).

The appeals examiner determined that the employee was terminated "for dishonesty in filing her several tax returns as her knowledge of the system's tolerance capacity in her unit, due to her work assignment, brought about her receipt of overpayment to which she was not justifiably entitled." The examiner concluded that the employee had used this confidential information dishonestly and that such use was not condoned.

OAR rejected the appeals examiner's factual findings because "[i]n misconduct cases, as in the instant case, the court has stated that inquiry is whether the petitioner was on notice that she could be discharged for her action." OAR further concluded that "there [was] substantial evidence of record that at least one of [the employee's] supervisors condoned the use of the 'tolerance system' by employees for their individual tax returns. Therefore, [the employee's] conduct is at best permissible and at worst merely negligent or a mistake in judgment." Moreover, OAR reached the following conclusion:

> While claimant's alleged conduct would amount to dishonesty and would not be tolerated, employer has failed to meet its burden, as required in violation of rules or

policy cases that claimant's violation was deliberate and that claimant was put on notice that her conduct could lead to her discharge.... However, in violation of rules cases, it is not enough to show that the rule or policy was violated, but [the] employer must also show that [the] employee was aware of the policy or rule; the rule was consistently enforced; and employee's violation was deliberate.

■ First, we note that the factual finding by the appeals examiner turned on the examiner's determination of the credibility of the witnesses, *see Gunty, supra,* 524 A.2d at 1198–99, and the inferences that could permissibly be drawn from that testimony. The appeals examiner found that the statements attributed to Grady and the other supervisor by the employee did not rise to the level of condonation. OAR, without providing any basis for doing so, rejected that finding, concluding that the comment by at least one of the supervisors did amount to condonation. OAR, however, was obligated to accept the finding by the appeals examiner, unless it was inherently implausible, because if "the Director can make [his or] her own credibility findings based upon a reading of the record, we would essentially scrap the principle of deference to the examiner who actually hears the testimony and is in the best position to make such determinations." *Gunty, supra,* 524 A.2d at 1198. Thus, in this case OAR lacked authority to reject the appeals examiner's resolution regarding the employee's defense of supervisor condonation even if OAR would "have reached a contrary result based on an independent review of the record." *Santos, supra,* 536 A.2d at 1088 (citation and internal quotation marks omitted).

■ Further, OAR also concluded that the employer had failed to sustain its burden "as required in violation of rules or policy cases that [the employee's] violation was deliberate and that [she] was put on notice that her conduct could lead to her discharge." OAR also determined that "in violation of rules cases, it is not enough to show that the rule or policy was violated, but the employer must also show that [the] employee was aware of the policy or rule; the rule was consistently

enforced; and employee's violation was deliberate." These conclusions, however, are not supportable because the employee was discharged for misconduct based on dishonesty, not for willful violation of employer's rules. *See* 7 DCMR § 312.3 (1986). The employment benefits regulations provide that:

312.3 Misconduct occurring in the course of work includes, but is not limited to, the following:

(a) *Willful violation of employer's rules;*

(b) Intoxication;

(c) Repeated disregard of reasonable orders;

(d) Sabotage;

(e) Gross neglect of duties;

(f) Insubordination; and

(g) *Dishonesty*

312.4 If willful violation of employer's rules is the basis for a disqualification from benefits because of misconduct, the Director shall determine the following:

(a) That the existence of the employer's rule is known to the employee;

(b) That the employer's rule is reasonable;

(c) That the employer's rule is consistently enforced by the employer.

7 DCMR §§ 312.3, 312.4 (1986) (emphasis added). While the regulations do provide that "[i]f willful violation of employer's rules is the basis for a disqualification from benefits because of misconduct, the Director shall determine" that the employer's rule was known to the employee, was reasonable, and was consistently enforced, 7 DCMR § 312.4(a)–(c), there is no such requirement when the misconduct alleged is "dishonesty." Here, the employee willfully submitted personal income tax returns for three separate years, claiming refunds she knew she was not entitled to receive. She submitted the returns expecting she could do so with impunity, based on the special knowledge gained through her employment. The appeals examiner found that conduct to be dishonest, and OAR specifically agreed, finding that "claimant's alleged conduct would amount to dishonesty."

 In reversing, OAR improperly applied the standards for discharges for willful violation of an employer's rules rather than for dishonesty. It can hardly be disputed that employees who use confidential information, available to them by virtue of their employment, to defraud the government on their own tax returns are dishonest. The appeals examiner, after hearing the testimony presented by both the employee and employer, including the employee's admission that she in fact falsified her tax returns, ruled that the employee's conduct was dishonest, and therefore constituted misconduct within the meaning of the regulations and the statute. *See* D.C.Code § 46–111(b)(2) (defining acts of misconduct disqualifying a person from receiving unemployment compensation benefits). In short, the appeals examiner concluded that the employer sustained its burden in proving dishonesty, and we have no doubt, after our own review of the record, that there was substantial evidence to support that decision. Indeed, any other conclusion would not be sustainable on this record.

Accordingly, OAR's rejection of the appeals examiner's findings cannot stand. We, therefore, reverse and remand the case for reinstatement of the appeals examiner's determination that the employee is not entitled to receive unemployment compensation benefits. *See Dell, supra,* 499 A.2d at 106–07.

*Reversed and remanded.*