Karen E. BRANSON, Petitioner,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.

No. 99–AA–115.

District of Columbia Court of Appeals.

Submitted Dec. 12, 2000.

Decided June 27, 2002.

Karen E. Branson, filed a brief pro se.

Michael A. Milwee, filed a brief for respondent.

Before TERRY, SCHWELB and WASHINGTON, Associate Judges.

TERRY, Associate Judge.

Petitioner, Karen Branson, seeks review of an order of the Department of Employee Services (DOES) affirming an appeals examiner's decision that Ms. Branson was ineligible for unemployment compensation. Petitioner presents four arguments. First, she contends that the appeals examiner erred by failing to address her claim that she left work because of an unhealthy working environment; second, she argues that the decision that she was ineligible for unemployment compensation was not supported by substantial evidence; third, she asserts that the appeals examiner erred by making a credibility determination without holding a hearing for that purpose; and

fourth, she maintains that the decision of the Office of Appeals and Review (OAR) affirming the examiner's decision exceeded the OAR's proper scope of review. We agree with petitioner's first contention and remand the case to DOES for further proceedings.

## I

■ Ms. Branson was hired as an attorney at Cooper and Associates by Algernon Cooper on January 12, 1998. She voluntarily resigned about five months later, on June 8, because she was continually exposed to cigarette smoke emanating from Mr. Cooper's office. Several days later Ms. Branson filed a claim for unemployment benefits, stating her reasons for resigning as follows:

> I am allergic to cigarette smoke. I informed my employer of this on more that one occasion and he continued to smoke. I did not know he was a smoker when I was hired. I could not continue to work in an unhealthy environment.[1]

A DOES claims examiner disqualified Branson from benefits because she had resigned voluntarily and without good cause. See D.C.Code § 51–110(a) (2001). The claims examiner found that Branson had quit voluntarily "due to health reasons" and that she had "failed to advise [her] employer of [her] medical condition or provide substantiating medical documentation."

Branson appealed from that decision and requested a hearing before an appeals examiner. In her request, she claimed that Mr. Cooper's smoking was "in violation of the law and creates an unhealthy work environment for all employees." When Branson testified at the hearing, she

---

1. The last two words of this sentence are partially obscured in the record, but Ms. Branson states, and we are satisfied after our own examination of the document, that the words are "unhealthy environment."

was asked by her employer's counsel on cross-examination whether she had ever presented Mr. Cooper with a notice from her doctor. Branson's counsel objected:

MR. MITCHELL: I have to object. This is not a medical case, this is an unsafe working condition.

HEARING EXAMINER: That's true, Mr. Mitchell. But you know yourself, when you leave available work, if you're stating that it's work-related, then she should have some type of medical documentation.

\* \* \* \* \* \*

MR. MITCHELL: ... [U]nsafe working conditions do not have to do with medical documentation. That is our opinion on this case.

HEARING EXAMINER: I will note that.

After the hearing, the appeals examiner affirmed the voluntary quit disqualification, ruling that Branson had left voluntarily and without good cause "due to dissatisfaction" and for "personal reasons." The examiner also stated that Ms. Branson did not tell Mr. Cooper of any medical condition at the time she was hired, and failed to provide him with any documentation of a medical condition.

Branson then appealed to the OAR, which remanded the case to the appeals examiner for specific credibility findings. The appeals examiner resolved the credibility issue on the existing record, without a further hearing. She again affirmed the voluntary quit disqualification, stating:

The employer is more credible since at the time of hire claimant was asked about any medical conditions that might cause her problem, and she answered the question "no". The claimant provided no medical documentation [and] has failed to meet her burden.

Branson appealed again to the OAR, which deferred to the appeals examiner's credibility determination and upheld her decision as supported by substantial evidence. No mention was made in the OAR's final decision of Branson's contention that her employer's smoking resulted in an unsafe working environment.

## II

D.C.Code § 51–110(a) provides, in pertinent part, that "any individual who left his most recent work voluntarily without good cause connected with the work, as determined under duly prescribed regulations, shall not be eligible for [unemployment compensation] benefits...." Branson voluntarily resigned; therefore, in order to qualify for benefits, she had the burden of showing that she left for "good cause connected with the work." *See* 7 DCMR § 311.4 (1986). Included among the reasons considered to be good cause are "unsafe" working conditions, 7 DCMR § 311.7(d), and "illness or disability caused or aggravated by the work," 7 DCMR § 311.7(e). These are separate reasons, and each must be proven separately; proof of one will not necessarily establish the other.

An employee who claims to have resigned for medical reasons must provide the employer with a "medical statement" before resigning so that the employer can verify the condition and make an accommodation if necessary. *See Bublis v. District of Columbia Dep't of Employment Services*, 575 A.2d 301, 303–304 (D.C.1990); 7 DCMR § 311.7(e). The appeals examiner found, and the OAR upheld her finding, that Ms. Branson did not inform Mr. Cooper of any medical condition at the time she was hired, and failed thereafter to provide him with any documentation of a medical condition. Although Ms. Branson claimed that she told Mr. Cooper that she had an allergy to cigarette smoke, the

examiner found Mr. Cooper more credible on this issue. Ms. Branson did not submit any medical documentation on the record, nor did she assert that she provided Mr. Cooper with such documentation. We therefore conclude that Ms. Branson never supplied Mr. Cooper with a "medical statement" as that term is used in the regulations.[2] Thus the examiner's determination that Ms. Branson did not show medical good cause under section 311.7(e) was supported by substantial evidence and was properly upheld by the OAR. *See, e.g., Gunty v. Department of Employment Services,* 524 A.2d 1192, 1197–1198 (D.C. 1987).[3]

Ms. Branson also maintains that the OAR and the appeals examiner erred by failing to address her claim that she left for good cause on account of an unhealthy working environment. This contention has merit.

■ An agency must give "full and reasoned consideration to all material facts and issues" and must "disclose[ ] the basis of its order by an articulation with reasonable clarity of its reasons for the decision." *Dietrich v. District of Columbia Board of Zoning Adjustment,* 293 A.2d 470, 473 (D.C.1972); *accord, e.g., Eilers v. District of Columbia Bureau of Motor Vehicle Services,* 583 A.2d 677, 686 (D.C.1990) (citing cases). Although the record shows that the examiner (and the OAR) sufficiently considered Ms. Branson's failure to show medical good cause as required by 7 DCMR § 311.7(e), nothing in the record indicates that any consideration was given to Branson's claim that she left because of an unsafe working environment, a different claim based on a different section of the regulations, 7 DCMR § 311.7(d). We will "not assume that [an] issue has been considered *sub silentio* when there is no discernible evidence that it has." *Washington Times v. District of Columbia Dep't of Employment Services,* 724 A.2d 1212, 1221 (D.C.1999) (footnote omitted).

■ DOES contends that the issue of an unsafe working environment was not raised in Ms. Branson's initial claim and was only a "fall back" argument that she presented for the first time on appeal. The record shows, however, that Branson raised the issue at every stage in the process, from her initial claim all the way through to the present petition for review. Since the issue was presented to the agency, and the agency failed to address it, we must remand the case to DOES for a determination of whether unsafe working conditions constituted good cause for Ms. Branson's voluntary resignation under section 311.7(d) of the regulations. *See Eilers,* 583 A.2d at 686.[4]

2. Ms. Branson claims that she orally notified Mr. Cooper of her allergy to cigarette smoke, but even if she did, such notification, without more, would not constitute a "medical statement" within the meaning of the regulations—*i.e.,* "a physician's statement or equivalent documentation." *Bublis,* 575 A.2d at 303.

3. Ms. Branson also contends that several ancillary findings by the OAR were not supported by substantial evidence. Specifically, she maintains that the findings that she left "because she did not get the office she wished" and that she did not feel that her problem with exposure to cigarette smoke was "important enough to put in writing" were not supported by substantial evidence. Even assuming that she is correct, these findings in no way affected the ultimate resolution of Ms. Branson's claim, and thus any error by the OAR in this regard was harmless. *See, e.g., King v. District of Columbia Dep't of Employment Services,* 560 A.2d 1067, 1073 (D.C.1989); *Sherman v. Commission on Licensure to Practice Healing Art,* 407 A.2d 595, 602 (D.C.1979).

4. Ms. Branson contends that Mr. Cooper's smoking created an unhealthy working environment *per se.* DOES responds that Ms. Branson had an obligation to bring any un-

## III

■ Ms. Branson's remaining claims of error are not persuasive. First, we find no error in the appeals examiner's credibility determination. Ms. Branson contends that the examiner was bound to hold a hearing to resolve credibility issues after the OAR remanded the case to her for that purpose, instead of basing her credibility findings on the existing record. We hold, however, that since the same examiner presided over the initial hearing at which Ms. Branson and Mr. Cooper both testified, she was not required to hold a second hearing simply to decide which of them was more credible. *See Braddock v. Smith*, 711 A.2d 835, 841 n. 9 (D.C.1998).

■ Second, contrary to Ms. Branson's present contention, the OAR did not exceed its proper scope of review. The OAR decision stated that the evidence adduced at the hearing before the appeals examiner "demonstrated that the witness testifying for the claimant had been terminated earlier by the employer." Branson claims that this was a *de novo* credibility determination which the OAR was not authorized to make. *See Washington Times*, 724 A.2d at 1216 ("When OAR reviews an appeals examiner's decision, due deference must be accorded [to] the credibility determinations of the examiner who heard and evaluated the evidence"). This contention is entirely without merit. As DOES correctly notes, the OAR was not making a credibility determination at all, but was merely reciting a fact in the record that it deemed relevant to its assessment of the evidence.

## IV

We affirm the decision of DOES that petitioner failed to prove that she resigned

safe working condition to Mr. Cooper's attention before she resigned so that it could be corrected. We express no view on these issues, which are more properly addressed by DOES on remand.

from her job for medical reasons. We remand the case to DOES with directions to consider and decide petitioner's separate and independent claim, based on 7 DCMR § 311.7(d), that an unsafe working environment constituted good cause for her resignation. On remand, the parties may present whatever evidence they have that bears on this issue, subject to general rules of relevancy, and may submit written arguments consistent with established DOES procedures.

*Affirmed in part, remanded in part.*

SCHWELB, Associate Judge, with whom Associate Judge WASHINGTON joins, concurring:

I concur in the judgment and join the court's opinion. I write separately, however, to add a few words about the nature and significance of the issue that the agency must decide on remand.

At first blush, one might conclude that, in the context of this case, there is little difference between "unsafe working conditions" (*i.e.*, "smoking is dangerous to everyone's health, including mine") and "medical reasons" (*i.e.*, "smoking can make me ill"). But as the court points out, the agency's rejection, based on a credibility determination, of Ms. Branson's medical grounds does not deal with the much broader safety claim that Ms. Branson is presenting here. Ms. Branson's attorney made the scope of that claim apparent at the hearing when he stated:

> We feel that our case is such that even a perfectly healthy person can quit their [sic] job if their [sic] boss insist[s] on smoking in the office. It is as simple as that.

Ms. Branson's brief on appeal does not retreat from that position. In other words, Ms. Branson claims that her former employer provided an unhealthy environment for *everybody*, including her. This claim is not dependent on her assertion that she is allergic to smoke; Ms. Branson implies that any worker can resign, and recover unemployment compensation, when a co-worker's smoking is disagreeable to her.

In some ways, the present case is a less than ideal vehicle for the exploration of Ms. Branson's thesis. The agency's final decision states, *inter alia*, that "employer's testimony contradicting claimant's version disclosed that when specifically asked if employer's smoking would bother her, claimant answered, 'there would be no problem.'" The appeals examiner found the employer's testimony credible, and we have no basis for questioning the examiner's finding. Moreover, it is undisputed that we are dealing here with an employer who had a filtration machine designed to counter the effects of his smoking. The agency also found, based on the examiner's credibility determination, that Ms. Branson never made a timely complaint to her employer regarding the allegedly dangerous condition, and the employer testified that he was unaware of any complaint until Ms. Branson tendered her letter of resignation.

Nevertheless, it was the obligation of the agency to make a finding on the question whether the employer's smoking constituted an unsafe condition as alleged. Although the parties have not cited it, there is a significant body of law on the subject. *See generally* Sonya A. Soehnel, Annotation, *Right to Unemployment Compensation as Affected by Employee's Refusal to Work in Areas Where Smoking Is Permitted*, 14 A.L.R.4th 1234 (1982 & Supp.2001), and authorities there cited.[1]

---

1. In *Lapham v. Commonwealth Unemployment Comp. Bd. of Review*, 103 Pa.Cmwlth. 144, 519 A.2d 1101, 1102 (1987), in holding that a claimant was entitled to unemployment compensation after resigning on account of exposure to cigarette smoke, the court stated:

  The evidence of the toxic nature of tobacco smoke and its injurious and deleterious effects on health is very strong, not only to the smokers, but also to the nonsmokers who are exposed to "secondhand" smoke.

  In *Shimp v. New Jersey Bell Telephone Company*, 145 N.J.Super. 516, 368 A.2d 408 (1976), the court took judicial notice of the toxic nature of cigarette smoke and its well known association with emphysema, lung cancer and heart disease, citing the Federal Cigarette Labeling and Advertising Act, P.L. 89–92, July 27, 1965, 79 Stat. 282, and the Surgeon General's report of 1972 entitled *The Health Consequences of Smoking*. Both recognized the dangerous nature of cigarette smoke and declared it a national policy to warn the public of its danger. The Surgeon General discouraged cigarette smoking. His reports indicate that the mere presence of cigarette smoke is an air pollutant and makes involuntary smokers of all who breathe the air. It is especially harmful to the health of those who have chronic heart conditions, pulmonary problems, and allergies to tobacco smoke.

  In *Ruckstuhl v. Commonwealth Unemployment Bd. of Review*, 57 Pa.Cmwlth. 302, 426 A.2d 719 (1981), on the other hand, the court held that the claimant, who had a nicotine allergy, was not entitled to compensation after she resigned "for health reasons" allegedly generated by exposure to cigarette smoke. The court held, *inter alia*, that

  [a]lthough it is now generally accepted that cigarette smoke may be harmful to smokers and non-smokers alike, we cannot presume for unemployment compensation purposes that anyone exposed to cigarette smoke in one's work environment is so physically harmed that a voluntary termination of employment will be automatically justified and unemployment benefits granted. Thus, we must treat this case as any other that involves a voluntary termination for health reasons.

  *Id.* at 721.

  Although neither of these cases, or any other decision cited in Ms. Soehnel's Annotation, is squarely on point here, these authorities

The agency should consider these and other pertinent authorities, as well as the particular facts of this case, in reaching its decision on remand.

illuminate the context in which the agency must make its decision on remand.